J-S39002-20

2020 PA Super 264

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                : PENNSYLVANIA
                                :
          v.                    :
                                :
                                :
                                :
RODNEY DERRICKSON               :
                                :
          Appellant             : No. 537 EDA 2019

Appeal from the Judgment of Sentence Entered November 8, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CR-23-CR-0004725-1994

BEFORE:   LAZARUS, J., OLSON, J., and PELLEGRINI, J.*

OPINION BY LAZARUS, J.:                    **FILED OCTOBER 30, 2020**

Rodney Derrickson appeals from the judgment of sentence, entered in
the Court of Common Pleas of Delaware County, following his resentencing
subsequent to the decisions of the United States Supreme Court in
***Montgomery v. Louisiana***, 136 S. Ct. 718 (2016), and ***Miller v. Alabama***,
132 S. Ct. 2455 (2012), which required resentencing for juveniles originally
sentenced to life in prison without the possibility of parole (LWOP). After
careful review, we affirm.

The trial court summarized the facts of this case as follows:

In the morning hours of December 14, 1994, Patrick Cassidy,
intent on purchasing cocaine, left his home in Exton,
Pennsylvania, and drove to the William Penn Housing Project in
Chester, arriving sometime around 5 [a.m.]. He stopped his
automobile, remaining in the driver's seat with the motor running
and the driver's side window down. Mark Harris approached the

_____

* Retired Senior Judge assigned to the Superior Court.

vehicle and offered to sell marijuana[;] Cassidy said that he wanted cocaine and not marijuana. [Cassidy] had what looked like a hundred dollar bill in his hand. At or about this time, Rodney Derrickson, the defendant, went to the driver's side and asked Cassidy if he wanted cocaine and also asked if he was going to pull off. Derrickson then reached into the car, took the keys out of the ignition, threw them back into the car and demanded that Cassidy give him the money. Instead of turning the money over to Derrickson, Cassidy tried to put it between his legs on the car seat. [Derrickson] then produced a weapon and fired two shots into Cassidy's body. Although mortally wounded, Cassidy apparently located the car keys and attempted to drive away, traveling only a short distance when he struck a parked motor vehicle. The police were called to the scene and found Cassidy dead, in his car. The cause of death was from the extreme loss of blood due to gunshot wounds to the chest and upper left arm.

Trial Court Opinion, 11/27/19, at 1-2.

A jury convicted Derrickson of second-degree murder and robbery on October 12, 1995. Though Derrickson was seventeen years old at the time of the homicide, he was sentenced to LWOP, pursuant to a mandatory sentencing statute. This Court affirmed his conviction on direct appeal, **Commonwealth v. Derrickson**, 688 A.2d 1226 (Pa. Super. 1996) (Table), and our Supreme Court denied his petition for allowance of appeal. **Commonwealth v. Derrickson**, 695 A.2d 783 (Pa. 1997) (Table). From the date he was sentenced through July 4, 2012, Derrickson filed three petitions for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, and one petition for Writ of State Habeas Corpus. All of these collateral attacks were denied, and the rulings were affirmed on appeal. On July 5, 2012, Derrickson filed a *pro se* petition for relief under the PCRA, challenging the constitutionality of his sentence in light of **Miller**, **supra**. Derrickson filed

- 2 -

additional petitions on August 9, 2012; January 7, 2013; and December 12, 2013, challenging his sentence on constitutional grounds. This Court affirmed the denial of those petitions. **See Commonwealth v. Derrickson**, 207 EDA 2015 (Pa. Super. filed August 12, 2015) (unpublished memorandum). On February 17, 2016, Derrickson filed a *pro se* PCRA petition challenging his sentence in light of **Montgomery**, **supra**. On November 1, 2018, the trial court granted Derrickson's petition and vacated his judgment of sentence. The court held a resentencing hearing on that same date and continued Derrickson's sentencing to November 8, 2018, so that the court could have additional time to consider, *inter alia*, the fifty-six defense exhibits appended to Derrickson's sentencing memorandum. On November 8, 2018, the court imposed a sentence of thirty years' to life imprisonment, making him eligible for parole in approximately four years. Derrickson filed a post-sentence motion on November 16, 2018, arguing that the court should reconsider his sentence and grant him immediate parole eligibility. A hearing was held on that motion on November 27, 2018, and the court denied the motion on January 30, 2019. Derrickson timely appealed; both he and the court have complied with Pa.R.A.P. 1925.[1]

---

[1] The Commonwealth's brief was due on July 20, 2020, but was filed on August 20, 2020. Prior to its late filing, this Court had already granted the Commonwealth two thirty-day extensions. Accordingly, the Commonwealth has received a *de facto* third such extension. We note our disapproval of such self-granted extensions.

On appeal, Derrickson presents the following issues for our review, which we have renumbered for ease of consideration:

1. Whether the mandatory life maximum sentence for [s]econd[-d]egree [] [m]urder is illegal, constituting cruel and unusual punishment, in violation of Article 1[,] Section 13 of the Pennsylvania Constitution and the 8th and 14th Amendments to the United States Constitution, in that it is imposed without any penological justification whatsoever, such as retribution, rehabilitation[,] or incapacitation[;] deprives [Derrickson] of his right to an individualized sentence as a juvenile[;] is disproportionate to the crime[;] and [] is the same maximum sentence imposed on one who commits [f]irst[-d]egree [m]urder, which is more serious because it requires proof of specific intent to kill and premedi[t]ation.

2. Whether the sentence imposed on [Derrickson] is illegal, where the decision in *Miller*[, *supra*,] invalidated mandatory life imprisonment for juveniles and struck down the only statutory scheme in Pennsylvania for sentencing juveniles convicted of murder, leaving a sentence for the lesser[-]included third[-]degree murder as the only lawful sentence for [Derrickson].

3. Whether reliance by the [c]ourt on 18 Pa.C.S.A. [§] 1102.1, rendered the sentence imposed illegal, as [Derrickson] was deprived of an individualized sentence, as required by the 8th and 14th Amendments to the United States Constitution and Article 1[,] Section 13 of the Pennsylvania Constitution.

4. Whether the sentence imposed upon [Derrickson] is illegal, where it was imposed without meaningful and adequate consideration [of] sentencing factors set out in *Miller*[, *supra*,] as required by *Commonwealth v*[]. *Machicote*, 206 A[.]3d 1110 (Pa. 2019). Those factors are: the defendant's chronological age and its hallmark features [including:] immaturity, impetuosity[,] and failure to appreciate [] risks and consequences; the defendant's family and home environment from which he cannot usually extricate himself—no matter how brutal or dysfunctional[;] the circumstances of the homicide offense, including the extent of the defendant's participation in the conduct and the way that familial and peer pressures may have affected him; the impact of the defendant's immaturity in dealing with the

criminal justice system; [and] the defendant's rehabilitation and the prospects for further rehabilitation. []

5. Whether the sentence imposed upon [Derrickson] is overly harsh and manifestly excessive, as it was imposed based upon consideration of the seriousness of the offense and [Derrickson's] prior juvenile record, without consideration of [his] rehabilitation while confined and his prospects for further rehabilitation.

Appellant's Brief, at 4-6.

Derrickson's first four issues on appeal implicate the legality of his sentence. We note that:

The legality of a criminal sentence is non-waivable, and this Court may raise and review an illegal sentence *sua sponte*. Because the legality of a sentence presents a pure question of a law, our scope of review is plenary, and our standard of review is *de novo.* If no statutory authorization exists for a particular sentence, that sentence is illegal and must be vacated.

***Commonwealth v. Pi Delta Psi, Inc.***, 211 A.3d 875, 889-90 (Pa. Super. 2019) (internal citations, quotation marks, emphasis, and ellipses omitted). Moreover, "in reviewing a constitutional claim, we face a pure question of law, for which our standard of review is *de novo* and our scope of review is plenary." ***Id.*** at 886 (citation and internal quotation marks omitted).

In his first claim, Derrickson argues that the court erred in sentencing him to a maximum sentence of life in prison because that sentence is not individualized to him, as is required by ***Miller***, ***supra***. Moreover, he claims that because Pennsylvania courts have previously recognized that parole is

punishment,[2] and because his sentence amounts to either imprisonment or parole for life, Derrickson did not receive an individualized sentence. Appellant's Brief, at 18-19.

Derrickson acknowledges our decision in *Commonwealth v. Seskey*, 170 A.3d 1105 (Pa. Super. 2017), where we held that a mandatory maximum life sentence is required for resentencing juvenile offenders convicted of second-degree murder based upon our reading of our Supreme Court's decision in *Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017) (*Batts II*).[3] Derrickson attempts to distinguish his case from *Seskey*, and states that *Batts II*, upon which the *Seskey* decision relies, did not "consider the requirement that individualized sentencing apply to both the minimum and maximum sentence. Instead, the *Batts II* court came to its conclusion about

---

[2] *See Commonwealth v. Williams*, 692 A.2d 1031, 1036 (Pa. 1997) (quoting *Hendrickson v. Pa. State Bd. of Parole*, 185 A.2d 581, 584 (Pa. 1962)) ("Parole is first and foremost a penological measure[.] The prisoner on parole is still in the legal custody of the state . . . and is under the control of the warden and [] the Commonwealth until expiration of the term of his sentence.").

[3] In *Seskey*, we stated,

> [f]or those defendants convicted of first or second-degree murder prior to June 25, 2012[,] for whom the sentencing court determines a [LWOP] sentence is inappropriate, it is our determination here that they are subject to a mandatory maximum sentence of life imprisonment accompanied by a minimum sentence determined by the common pleas court upon resentencing.

*Commonwealth v. Seskey*, 170 A.3d 1105, 1108 (Pa. Super. 2017) (quoting *Batts II*, *supra* at 421) (brackets omitted; emphasis removed).

the maximum sentence purely [from] a reading of the Pennsylvania homicide statute in light of **Miller** and **Montgomery**[, **supra**.]" Appellant's Brief, at 21. Derrickson notes that as a result of Pennsylvania's parole eligibility laws, "[a] mandatory life maximum sentence [] provides the [p]arole [b]oard with the ability to effectively impose a [LWOP] sentence by the denial of parole[.]" **Id.** at 22. Derrickson concludes by citing to the federal trial court decision in **Songster v. Beard**, 201 F.Supp.3d. 639 (E.D. Pa. 2016), and claims that "imposing a mandatory life maximum sentence reflects an abdication of judicial responsibility" by "[p]assing off the ultimate decision to the [p]arole [b]oard in every case." **Id.**

In the alternative, Derrickson argues that even if he were released on parole, he would still be subject to "extensive monitoring" and other requirements of parole supervision for the rest of his life. **Id.** at 23. If paroled, Derrickson would:

> face[] the possibility of being confined for any number and manner of minor infractions that have little or no bearing on his ability to live a lawful and productive life[.] . . . [T]o subject a person who has demonstrated not only that his crime was the result of transient immaturity[,] but also that he has rehabilitated and continues to manifest potential for rehabilitation, offends precepts of cruel and unusual sentences that are more readily remedied by an individualized sentence.

**Id.** at 23-24. Derrickson argues that this sentence is not individualized to him. **Id.** We disagree.

We recently addressed a constitutional challenge to the mandatory maximum life sentence under 18 Pa.C.S.A. § 1102(b) in **Commonwealth v.**

*Olds*, 192 A.3d 1188 (Pa. Super. 2018). In *Olds*, the appellant was convicted of second-degree murder as a fourteen-year-old co-conspirator in a fatal shooting. The appellant was sentenced to a mandatory term of LWOP, despite the fact that he neither committed the killing nor intended that the victim be killed. Following the United States Supreme Court's decisions in *Miller* and *Montgomery*, the appellant was resentenced to twenty-years-to-life in prison. Like Derrickson, the appellant in that case argued that the *Seskey* decision was "too broad." *Olds*, *supra* at 1193. After engaging in statutory interpretation of section 1102(b), and comparing it to the *Batts II* analysis regarding section 1102(a), this Court held that section 1102(b) "must be interpreted to require a maximum sentence of life imprisonment for juveniles convicted of second-degree murder." *Olds*, *supra* at 1194. Moreover, in finding section 1102(b) constitutional, we noted that the Court in *Batts II* "emphasized" repeatedly that section 1102(a) was "constitutionally sound." *Id.* at 1195.

Notably, the *Olds* Court explained the specific constitutional issue that *Miller* and *Montgomery* addressed with regard to mandatory sentencing:

> Our Supreme Court held that it is the interaction of section 1102(a) with 61 Pa.C.S.A. § 6137(a)(3) (which bars parole for individuals sentenced to life imprisonment) that causes constitutional problems when applied to juvenile offenders. *See Batts II*, [*supra*] at 439-[]41. Thus, our Supreme Court held that the appropriate remedy is to exempt juveniles convicted of first-degree murder prior to June 25, 2012[,] from the mandates of section 6137(a)(3). *See id.* at 439. In other words, the **mandatory** imposition of **LWOP** upon juveniles was deemed unconstitutional. *Batts II*, however, kept

in place the requirements of section 1102(a), *i.e.*, that juveniles convicted of first-degree murder must be sentenced to a maximum term of life imprisonment. ***See id.*** at 439-[]41.

> **[W]e hold that it is not the term of life imprisonment that makes applying section 1102(b) to juvenile offenders unconstitutional. Instead, it is the mandatory nature of that punishment when section 6137(a)(3)** (which prohibits parole) **is applied that raises constitutional concerns.** Thus, section 6137(a)(3) cannot be applied to juveniles convicted of second-degree murder prior to June 25, 2012. In other words, such juveniles **must be sentenced to a maximum period of life imprisonment; however, they are eligible for parole after a term[]of[]years specified by the trial court.**

***Id.*** (emphasis added and in original). This Court concluded that the maximum

life sentence was required even after addressing the constitutional concerns

in both Justice Breyer's concurrence in **Miller**[4] and the **Songster** decision.[5]

**See Olds**, **supra** at 1198 ("[T]rial courts must sentence juveniles convicted

_____

[4] As we explained in **Olds**:

> Nothing in Pennsylvania case law indicates that our Supreme Court (or this Court) is prepared to expand Justice Breyer's concurrence and prohibit mandatory life maximums for juveniles who commit second-degree murder but did not kill or intend to kill.
>
> *       *       *
>
> Justice Breyer's concurrence speaks only to LWOP sentences—not life maximums[,] which allow for parole eligibility based upon demonstrated maturity and rehabilitation.
>
> In the future, our nation's standards of decency may evolve to the point where sentencing a juvenile convicted of second-degree murder under an accomplice or co-conspirator theory of liability is considered disproportionate and, therefore, cruel and unusual punishment. . . . Our society deems the taking of a life, either directly or as an accomplice or co-conspirator, sufficiently grievous as to require that the defendant not be entitled to release without first going through the parole process. Accordingly, we hold that the Eighth Amendment permits imposition of section 1102(b)'s mandatory maximum term of life imprisonment for juveniles convicted of second-degree murder, who did not kill **or intend to kill**.

**Id.** at 1197 (emphasis added). We note that Justice Breyer's concerns, here, are not relevant to Derrickson's case since Derrickson was the shooter, and he was not convicted on a theory of co-conspirator liability. **See** Trial Court Opinion, 3/1/96, at 2-3.

[5] In **Olds**, the Court addressed the appellant's citation to the federal court's **Songster** decision, which the appellant made in support of his Eighth Amendment argument:

of second-degree murder prior to June 25, 2012[,] to a maximum term of life imprisonment under section 1102(b). We hold that such mandatory maximums do not violate the Eighth Amendment's ban on cruel and unusual punishment.").

Here, Derrickson's attempt to distinguish **Seskey** is unavailing. **Olds**, which is nearly on all-fours with Derrickson's case, confirms through statutory interpretation **Seskey**'s conclusion that section 1102(b) must be applied to juveniles convicted of second-degree murder prior to June 25, 2012. Derrickson was convicted of second-degree murder on October 12, 1995. Therefore, the trial court was required to sentence Derrickson to a maximum term of life imprisonment. **See** 18 Pa.C.S.A. § 1102(b); **see also Olds**, **supra** at 1198.

Moreover, with regard to Derrickson's lifetime parole argument, we have previously said that juvenile defendants are not entitled to eventual freedom or guaranteed release under the Eighth Amendment:

---

We find **Songster** unavailing. **Songster** does not directly cite to **Graham** [**v. Florida**, 560 U.S. 48 (2011),] a single time. As we have set forth above, **Graham** addresses whether parole boards may make the ultimate determination that an individual has demonstrated the requisite maturity and rehabilitation to deserve release. Hence, we do not agree with **Songster** and **hold that it is not binding authority in Pennsylvania.**

**Id.** at 1197 n.18 (emphasis added). We therefore note **Songster**'s continued non-binding status in Pennsylvania.

- 11 -

> *Graham* [*v. Florida*, 560 U.S. 48 (2011),] makes clear that "[a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a non[-]homicide crime. What the State must do, however, is give defendants . . . some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." In other words, consistent with the Eighth Amendment, a state can set a mandatory maximum term of life imprisonment, even for non[-]homicide offenses, so long as it grants defendants the opportunity for parole based upon demonstrated maturity and rehabilitation.

*Olds*, *supra* at 1196 (internal citations omitted). Here, Derrickson finds himself in exactly this scenario. The trial court sentenced Derrickson to thirty-years-to-life in prison. He will be eligible for parole in approximately four years. *See* N.T. Sentencing, 11/8/19, at 21. Therefore, Derrickson's first claim on appeal fails.

Next, Derrickson argues that his life sentence for second-degree murder is illegal because he can only be sentenced to a maximum of forty years' imprisonment for the lesser included offense of third-degree murder. *See* Appellant's Brief, at 29-33. Derrickson reasons that a sentence for third-degree murder is the only possible result because *Miller* invalidated "the only statutory sentence which may be imposed [upon] juveniles convicted of [s]econd[-d]egree [] [m]urder," and because the Pennsylvania Legislature responded to *Miller* by enacting legislation which only applies to juveniles convicted of second-degree murder after June 24, 2012. *See* 18 Pa.C.S.A. § 1102.1(c) ("A person who has been convicted, after June 24, 2012, of a murder of the second degree . . . and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows . . ."). In

- 12 -

making this argument, Derrickson acknowledges that our Supreme Court already rejected it in *Commonwealth v. Batts*, 66 A.3d 286 (2013) (*Batts I*), and in *Batts II*, *supra*. *See* Appellant's Brief, at 30. Nevertheless, Derrickson argues that those cases were decided in the context of first-degree murder, and so he concludes, "those rulings cannot be said to apply to [s]econd[-d]egree [m]urder." *Id.* We disagree.

In *Commonwealth v. Machicote*, 172 A.3d 595 (Pa. Super. 2017), *rev'd and remanded on other grounds*, 206 A.3d 1110 (Pa. 2019), we adopted the *Batts II* reasoning for **juveniles convicted of second-degree murder** and found that "we are bound by our Supreme Court's decision" on that issue. *Id.* at 601-02. *Machicote* completely aligns with the holding and reasoning in *Olds*, another second-degree murder case, where we explained:

> On June 24, 2012, the Supreme Court of the United States issued *Miller*. Thereafter, our General Assembly enacted section 1102.1 and made it retroactive for juveniles convicted of first or second-degree murder after June 24, 2012. **Moreover, our General Assembly amended section 1102 to clarify that it does not apply to juveniles convicted of first or second-degree murder after June 24, 2012. Section 1102, therefore, applies to** adults convicted of first or second-degree murder and **juveniles convicted of** first or **second-degree murder prior to June 25, 2012**.

*Olds*, *supra* at 1193-94 (emphasis added).

Here, the jury convicted Derrickson of second-degree murder on October 12, 1995. Because Derrickson's conviction occurred "prior to June 25, 2012," *see Olds*, *supra*, the court had "statutory authorization" when it sentenced him to a maximum of life in prison pursuant to section 1102(b).

- 13 -

*See Pi Delta Psi, Inc.*, *supra*. Additionally, we have previously noted the *Seskey* decision indirectly held that sections 1102(a) and 1102(b) should be treated the same. *See Olds*, *supra* at 1195 ("*Seskey* implicitly held that there was no reason to follow a different approach when assessing the constitutionality of section 1102(b)."). Therefore, Derrickson's second claim on appeal fails.

Next, Derrickson argues that the court improperly relied on 18 Pa.C.S.A. § 1102.1,[6] which deprived him of an individualized sentence. *See* Appellant's Brief, at 60-65. Specifically, Derrickson claims that, during the sentencing hearing, the court relied on the mandatory minimum sentence for juveniles older than fifteen years of age convicted of second-degree murder after June 24, 2012, as set out in section 1102.1(c)(1).[7] *Id.* at 60. Derrickson states

---

[6] Section 1102.1(c)(1) states, "A person who at the time of the commission of the offense was 15 years of age or older **shall be sentenced** to a term of imprisonment the minimum of which shall be at least 30 years to life." 18 Pa.C.S.A. § 1102.1(c)(1) (emphasis added).

[7] At sentencing, the court stated:

> I undertook similarly diligent efforts to assure my continued familiarity with the law applicable to the current considerations this resentencing presents. [] **Miller** [] and **Montgomery** [] ensure that life-without-parole-sentences are meted out only to the rarest of juvenile offenders whose crimes reflect[] permanent incorrigibility, irreparable corruption, and irretrievable depravity[. I]n [**Batts II**, the Pennsylvania Supreme Court] established procedural safeguards and promulgated additional directives to trial courts detailing those proper considerations attend[ant] to juvenile murderer resentencings. Regarding such, the [] Court[] has directed there's a presumption against the imposition of life

- 14 -

that "[r]eliance on a thirty[-]year mandatory minimum as a starting point [below which the court would not go] for the minimum sentence[] was not required," and that such reliance deprived Derrickson of his right to an individualized sentence, under **Miller**. Appellant's Brief, at 62, 65. We disagree.

We have previously noted that in **Batts II**, our Supreme Court required trial courts to consider the penalties set forth in section 1102.1 when resentencing juveniles who were initially sentenced to LWOP. **See Commonwealth v. Foust**, 180 A.3d 416, 439 (Pa. Super. 2018) ("[T]he [sentencing] court is required to consider the sentencing guidelines. . . . [N]o sentencing guidelines exist for juveniles convicted . . . prior to June 25, 2012. Instead, our Supreme Court in **Batts II** held that . . . the applicable sentencing guidelines . . . are the mandatory minimum penalties set forth

_____

without parole for a [d]efendant convicted of murder committed as a juvenile[. T]o rebut the presumption[,] the Commonwealth has the burden to prove beyond a reasonable doubt the juvenile [offender] is permanently incorrigible and thus unable to be rehabilitated. To be constitutionally valid, the sentencing court must find a juvenile offender is permanently incorrigible and that rehabilitation would be impossible. **The sentencing court's decision must take into account the factors announced in Miller and section 1102.1 of the Pennsylvania Crimes Code.**

N.T. Sentencing, 11/8/18, at 5-7 (emphasis added). As we discuss in greater detail, **infra**, the court's statement was a correct pronouncement of the law if the Commonwealth had sought a LWOP sentence for Derrickson. In this case, the **Miller** factors were irrelevant because the Commonwealth did not seek such a sentence. On the other hand, also discussed in greater detail, **infra**, the court correctly stated that it was required to consider section 1102.1.

- 15 -

in section 1102.1.")  (internal citations and quotation marks omitted);  **see also Commonwealth v. Melvin**, 172 A.3d 14, 21 (Pa. Super. 2017) quoting **Commonwealth v. Walls**, 926 A.2d 957, 962-63 (Pa. 2007)  ("[W]hile the court **must consider the guidelines**, the court is also afforded broad discretion in sentencing matters, as it is in the best position to evaluate the individual circumstances before it.") (emphasis added).

Although the decisions in **Foust** and **Batts II** pertained to appellants convicted of first-degree murder and resentenced under section 1102(a), we find that that difference is of no moment.  Similar to section 1102(a), there are no sentencing guidelines under section 1102(b) for the court to consider when resentencing juvenile offenders convicted of second-degree murder.[8] Here, because there are no such sentencing guidelines for section 1102(b), the court was required to consider the maximum terms set forth in section 1102.1.  **See Foust**, **supra**; **see also Batts II**, **supra** at 458 ("[W]e believe that section 1102.1 will 'help frame the exercise of judgment by the court in imposing a sentence' and 'may provide an essential starting point  . . . **that must be respected and considered**' when determining the appropriate minimum sentence for a juvenile convicted of first-degree murder prior to the **Miller** decision.") (citation omitted; emphasis added).  Our review of the

---

[8] At sentencing, the Commonwealth's attorney argued, and Derrickson did not dispute, that under the sentencing guidelines, a juvenile in Derrickson's sentencing posture, convicted after the enactment of the new sentencing provision in section 1102.1, would face up to a suggested fifty-two years' imprisonment.  **See** N.T. Sentencing, 11/1/18, at 38-39.

sentencing transcript reveals the court thoughtfully considered a multitude of factors, including section 1102.1, as is required. *See Batts II*, *supra.* Therefore, there was no error and Derrickson's third claim on appeal fails.

Next, Derrickson argues that his sentence was illegally imposed where the sentencing court failed to consider the *Miller* factors as they were reiterated in *Machicote*, 206 A.3d at 1113. *See* Appellant's Brief, at 33-41. Specifically, Derrickson notes that our Supreme Court, in *Batts II*, required consideration of the *Miller* factors anytime the Commonwealth seeks imposition of a LWOP sentence on a juvenile offender. *See Batts II*, *supra* at 455 (to overcome presumption against imposition of LWOP sentence for juvenile offender, Commonwealth must prove juvenile is constitutionally eligible for sentence and may present evidence relating to factors announced in *Miller* and appearing in section 1102.1(d)). Derrickson "respectfully" claims that "[t]he Pennsylvania Supreme Court didn't go far enough[] in requiring consideration [] of the *Miller* factors[] only when the juvenile faces life. This is because even if the Commonwealth does not seek a life without parole sentence, the sentencing court still has wide discretion in fashioning an appropriate minimum sentence." Appellant's Brief, at 35-36. Derrickson notes that this Court has upheld lengthy minimum sentences ranging from thirty years to fifty years against challenges that they amount to *de facto* life sentences. *Id.* at 36. He concludes that the *Miller* factors, as set out in

***Machicote***, are applicable to cases such as his, where the Commonwealth has **not** sought a LWOP sentence.[9]  ***Id.*** at 37.

First, we note again that the specific constitutional issue in ***Miller*** is "**the mandatory nature of** [**a sentence of life imprisonment**] **when section 6137(a)(3)** (which prohibits parole) **is applied.**    Thus, section 6137(a)(3) cannot be applied to juveniles convicted of second-degree murder prior to June 25, 2012." ***Olds***, ***supra*** at 1195.   Therefore, if a juvenile defendant, like Derrickson, is sentenced to a maximum term of life with a minimum term of imprisonment after which the defendant becomes parole-eligible, the constitutional concerns in ***Miller*** are not implicated.  ***See id.*** at 1196 citing ***Graham***, ***supra***.

Second, we recently affirmed a defendant's judgment of sentence for a first-degree murder conviction where the court did not consider the ***Miller*** factors and where the Commonwealth did not seek, and the court did not impose, a LWOP sentence.  ***See Commonwealth v. Lekka***, 210 A.3d 343, 357 (Pa. Super. 2019); ***see also Commonwealth v. White***, 193 A.3d 977, 983 (Pa. Super. 2018) ("[A] sentencing court must consider the[] ***Miller*** factors only in cases where the Commonwealth is attempting to meet its burden of overcoming the presumption against juvenile LWOP

_____

[9] We note that this argument does not follow.  Indeed, if this Court has previously held that lengthy minimum sentences **do not** amount to *de facto* life in prison, then imposition of a lengthy minimum sentence would not automatically trigger LWOP review.  In fact, Derrickson cites to no specific authority for his claim.

sentences. Because the Commonwealth did not seek a LWOP sentence, this issue is moot as application of the *Miller* factors is immaterial.").

Here, the Commonwealth did not seek, and the court did not impose, a LWOP sentence. Therefore, the court was not required to consider the *Miller* factors, *see Lekka*, *supra*, and Derrickson's fourth claim on appeal fails. *See* Appellant's Brief, at 35 ("[Derrickson] concedes that *Machicote* by its express terms requires on-the-record consideration of the *Miller* factors, **only in the event that a sentence of life imprisonment** [**without parole**] **is a possibility**.") (emphasis added). To the extent that Derrickson's claim raises concern that the court failed to consider relevant sentencing factors outlined in the Sentencing Code, we consider such arguments under the discretionary-aspects-of-sentencing analysis. *See White*, *supra* at 983.

Finally, Derrickson challenges the discretionary aspects of his sentence. It is well-established that:

> The right to appeal the discretionary aspects of a sentence is not absolute. To determine whether an appellant has properly preserved the discretionary aspects of sentencing for appellate review, we must conduct the following four[-]part analysis: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis. Generally, however, in order to establish a substantial question, the appellant must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process.

- 19 -

*Commonwealth v. Dunphy*, 20 A.3d 1215, 1220-21 (Pa. Super. 2011) (internal citations, quotations marks, and footnotes omitted).

Here, Derrickson has filed a timely notice of appeal, preserved the issue in a motion to reconsider sentence, *see* Defendant's Motion [for] Reconsideration, 11/16/18, at 1-3, and has included a Pa.R.A.P. 2119(f) statement in his brief.[10] *See* Appellant's Brief, at 42. Moreover, Derrickson's Rule 2119(f) statement raises three recognized substantial questions insofar as it alleges that: his sentence is "manifestly excessive and overly harsh, and is unreasonable," that it was imposed "based on the serious nature of the crime," and that the "sentencing court failed to give due consideration as is required by 42 Pa.C.S. [§] 9721(b)." Appellant's Brief, at 42.

We note that a claim that a sentence is manifestly excessive might raise a substantial question if the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence imposed violates a specific provision of the Sentencing Code or the norms underlying the sentencing process. *Commonwealth v. Mouzon*, 812 A.2d 617, 627 (Pa. 2002).

---

[10] Both the trial court and Commonwealth question whether Derrickson properly preserved this claim for appeal. *See* Appellee's Brief, at 27; Trial Court Opinion, 11/27/19, at 45-49. Derrickson's motion for reconsideration was sufficient for preservation purposes. *See Dunphy*, *supra* (issue can be preserved "**in a motion to reconsider and modify sentence**") (emphasis added). Moreover, we have previously found that, where an appellant timely appeals from his judgment of sentence, argues that his sentence is excessive at the time of sentencing, includes a Pa.R.A.P. 2119(f) statement in his brief, and raises a substantial question, we may address the merits of the appeal. *See Commonwealth v. Hill*, 210 A.3d 1104, 1116 (Pa. Super. 2019). Here, Derrickson has satisfied each of the *Hill* elements; therefore, we may proceed to the merits of his appeal.

Additionally, "an averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question . . . [and] an allegation that the court considered an impermissible sentencing factor raises a substantial question." *Commonwealth v. Macias*, 968 A.2d 773, 776 (Pa. Super. 2009) (internal citations omitted). Moreover, a claim that "the trial court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of Appellant, as 42 Pa.C.S.A. § 9721(b) requires[,]" presents a substantial question for our review. *Commonwealth v. Riggs*, 63 A.3d 780, 786 (Pa. Super. 2012). Therefore, we will proceed to the merits of Derrickson's claims.

Our standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Blount*, 207 A.3d 925, 934-35 (Pa. Super. 2017) (quoting *Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014)). Moreover, this Court's review of the discretionary aspects of a sentence is governed by 42 Pa.C.S.A. §§ 9781(c) and (d). *Commonwealth v. Dodge*, 77 A.3d 1263, 1274 (Pa. Super. 2013). Section 9781(c) reads:

(c) Determination on appeal.—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S.A. § 9781(c). Subsection 9781(d) requires that in reviewing the record, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

Here, Derrickson claims that the trial court abused its discretion by considering "the breadth and seriousness of [Derrickson's] juvenile record [more] than any other factor," and that the court "appears to have disregarded the offenses for which [Derrickson] was actually adjudicated, and assumed that he committed many more serious crimes." Appellant's Brief, at 48. He also argues that the court "did not follow the mandate of [s]ection

9721(b) by considering [Derrickson's] character." *Id.* at 51. Finally, Derrickson claims that the court did not "explain how [Derrickson's] efforts at rehabilitation factored into the sentence imposed," *id.* at 49, and that the sentencing court did "not place[] on the record any reason why [Derrickson] should wait any longer for parole review." *Id.* at 50-51.

Here, the trial court presided over the two-day sentencing hearing and heard Derrickson's post-sentence motion to reconsider the sentence. The sentencing hearing commenced on November 1, 2018, where the court was presented with Derrickson's sentencing memorandum and fifty-six appended exhibits, including two expert reports. The court then noted the supportive presence of fifteen of Derrickson's family members and friends, *see* N.T. Sentencing, 11/1/18, at 7-9, heard testimony from four of those supporters, *see id.* at 10-22, and heard Derrickson's allocution. *See id.* at 22-29. The Commonwealth then presented the court with the victim's supporting family members in attendance, and presented two victim impact statements from 1995. *See id.* at 29-35. The court also heard argument from Derrickson's counsel and from the Commonwealth attorney. *See id.* at 35-49. The court then continued the hearing to November 8, 2018, to gain additional time to consider all of the evidence presented.

At the November 8 hearing, in addition to stating the evidentiary bases for rendering its sentence,[11] the court stated its findings of fact and the factors

---

[11] Upon reconvening the sentencing hearing on November 8, 2018, the court stated:

Since the close of the resentencing evidentiary presentation, **I have had the opportunity to fully review and consider each and every evidentiary exhibit**, all admitted without opposition, including but not limited to the various Pennsylvania Department of Correction materials, [] Derrickson's Delaware County juvenile court file, the mitigation report of Dr. [Taylor], as well as that of Dr. Wynn, **particularly those reports, as they're salient to [] Derrickson's childhood** up to the time where he committed his offenses, [] as well as **his then–age-related characteristics**, and [] **Derrickson's current rehabilitative prospects**. I have likewise fully reviewed and considered the balance of the defense's **56 exhibits appended to its memorandum in support of resentencing**, which, among other things, were a number of educational and vocational certificates, as well as varied completed treatment recognitions and a listing of inmate organizational involvement, including such a group [] Derrickson helped found. **I've equally deliberated and reflected on testimony of every prosecution and defense resentencing witness**, including but not limited to those speaking with such understandable emotion about individual and familial impact, as well as similar such emotive statements of the victim's family members the prosecution read aloud, and certainly those persons who have [] described with [] Derrickson their interactions throughout his incarceration and those who voiced their varied support of him[,] **and of course that** [**testimony**] **offered by** [] **Derrickson** when he exercised his right of allocution.

\* \* \*

The sentencing **court's decision must take into account the factors announced in *Miller*[, *see supra* at n.7,] and section 1102.1 of the Pennsylvania Crimes Code.** Traditional sentencing considerations also apply. Now, having considered all the evidence made available to it, this [c]ourt understands the most difficult[,] yet intellectually and legally honest decision the

it considered in imposing Derrickson's sentence. *See* N.T. Sentencing, 11/8/18, at 7-20. Specifically, contrary to Derrickson's claim, the court weighed not only Derrickson's juvenile record, *see id.* at 10-11, 14-18, but also the specific crime underlying his second-degree murder conviction.[12] Moreover, the court clearly considered Derrickson's character and efforts at

---

Commonwealth made[,] in not seeking once more for [] Derrickson the re[-]imposition of [LWOP]. Hence, **it is for this [c]ourt to determine**, following the directives from both the United States [and] Pennsylvania Supreme Courts[,] **a minimum term of years, along with the mandate of life maximum, which will**, as deemed proper by the Pennsylvania Board of Probation and Parole, **render** [] **Derrickson parole-release-eligible.**

N.T. Sentencing, 11/8/18, at 4-7 (emphasis added).

[12] The court explained:

The nature and circumstances of Mr. Cassidy's murder are those of a senseless and needless act of firearm–driven violence. Mr. Derrickson, despite his continued claims of innocence, was found beyond a reasonable doubt by a jury to have shot and killed in the course of robbing [] Mr. Cassidy, a seemingly unarmed victim from whom Mr. Derrickson, with his brandished handgun, could have otherwise readily stolen the money he sought. Throughout the years of directing collateral litigation at bar, the integrity of this conviction has withstood any and all challenges. Mr. Derrickson bears the full weight of his conviction's culpability in that he was not found guilty as an unarmed accomplice aiding a criminal cohort when acting as a lookout. Rather, he was the principal and with a gun by his own hand shot twice and murdered Mr. Cassidy. There is nothing attend[ant] to Mr. Derrickson's criminality that suggests any notable degree of illicit sophistication.

N.T. Sentencing, 11/8/18, at 8-9.

rehabilitation,[13] in addition to the other factors specified under section 9721(b). Finally, we note that the court was neither required to state anything regarding specifically how Derrickson's efforts at rehabilitation factored into the sentence, nor specifically why Derrickson should wait longer for parole review. **See Foust**, **supra** at 439 ("The [trial] court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b), however, the record as a whole must reflect due consideration by the court of the statutory considerations at the time of sentencing."). Derrickson has shown neither that the sentencing court "applied the guidelines erroneously," **see** 42 Pa.C.S. § 9781(c)(1), nor that Derrickson's "case involves circumstances where the application of the guidelines would be clearly unreasonable." **See** 42 Pa.C.S. § 9781(c)(2). Therefore, we affirm the sentence imposed by the sentencing court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/20

---

[13] The court stated, "Mr. Derrickson was found by Drs. Taylor and Wynn, as well as the relevant Pennsylvania Department of Correction[s] personnel, to presently be a low risk of both recidivating generally and/or violently. There is no evidence to the contrary." N.T. Sentencing, 11/8/18, at 8.