J-S50028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAIRI HARRIS | : | |
| | : | |
| Appellant | : | No. 2933 EDA 2019 |

Appeal from the PCRA Order Entered June 30, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000498-2012

BEFORE:   BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 16, 2021**

Appellant, Kairi Harris, appeals *nunc pro tunc* from the order entered on June 30, 2017, denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

In our disposition of Appellant's direct appeal, a prior panel of this Court set forth the relevant facts of this case, as follows:

> Appellant and his cousin were sitting outside Appellant's house at 441 E. Rittenhouse Street in Philadelphia on the afternoon of December 23, 2011. While they were sitting on the porch, Durrell Hall and Samuel Evans drove by Appellant's house in a vehicle. When their vehicle reached the stop sign directly in front of Appellant's house, Appellant and his cousin opened fire at Hall and Evans who were inside the vehicle. As the vehicle sped away eastbound on Morton Street, Appellant and his cousin continued to fire at the vehicle. Hall and Evans were sitting in the front seats of the vehicle. Appellant and his cousin fired a total of 12 shots

_____

[*] Retired Senior Judge assigned to the Superior Court.

from two guns: ten .40 caliber rounds and two 9 millimeter rounds.

At least one of the bullets did not hit the intended victims or the vehicle. Instead, this stray bullet sailed halfway down the block and entered the second floor window of the residence of Gwendolyn Knox, who lived at 5817 Morton Street. Knox was in her upstairs bedroom watching over a one-year old child when she heard the gunshots. As Knox sat up in her bed, the stray bullet struck her in her face. The bullet entered Knox's jaw, travelled through her head and neck, and ultimately lodged in her spine. Police officers carried Knox down her steps in a bed sheet and rushed her to the Albert Einstein Medical Center. Knox entered the hospital in critical condition, and she spent nearly two weeks there in recovery. Knox suffered fractured vertebrae at the base and center of her neck, painful and permanent nerve damage, a broken jaw in two places, a severed artery in her neck, and a non-paralytic stroke. Doctors placed a stent in her neck to repair her severed artery. Doctors removed the bullet ten months later. Knox still receives therapeutic services as a result of her injuries.

Immediately after the shooting, Appellant and his cousin ran into Appellant's house. A few minutes later, a car pulled up to Appellant's house and picked up both Appellant and his cousin who then fled the scene of the shooting.

* * *

Otis Thompson was the only eyewitness who testified at trial. Thompson knew Appellant, his cousin, and the intended shooting victims (Durrell Hall and Samuel Evans) from previous encounters in the neighborhood over the past fifteen years. Thompson never had a problem with Appellant or his cousin, and in fact, considered them as friends. At the time of the shooting, Thompson was sitting across the street by a statue and observed the entire shooting from the beginning (Hall and Evans driving towards Appellant's house) to the end (Appellant and his cousin getting into a car and fleeing the scene). The shooting occurred in broad daylight, and nothing obstructed Thompson's view of the shooting.

At trial, Thompson testified that:

• He heard 12 shots, which was the exact same number of fired cartridge cases recovered by detectives at the scene.

• One week before the shooting, Appellant showed Thompson a 9 mm Taurus gun, which was the same caliber as two of the fired cartridge cases recovered from the scene of the shooting.

• Around the time of the shooting, males from Mechanic Street were beefing with the males from Rittenhouse Street because Durrell Hall (one of the intended shooting victims in the vehicle) owed money to Appellant.

A few hours after the shooting on December 23, 2011, Thompson was arrested for illegally possessing a gun. Approximately 12 hours after the shooting and while he was in custody for his own gun case, Thompson gave a statement to detectives implicating Appellant and Appellant's cousin in the shooting. Thompson testified that the District Attorney's office and detectives made no promises to him in exchange for any of his statements to detectives or his testimony in court. Following Thompson's statement, detectives said they would try to move Thompson to a different county prison due to Thompson's concern regarding witness intimidation. On the date he was arrested for his gun case, Thompson was on probation for another gun case. The parties stipulated that the gun allegedly possessed by Thompson on the night of December 23, 2011, was not the same caliber of gun as the 12 fired cartridge casings recovered from the shooting.

* * *

While Appellant was incarcerated, [he] made numerous phone calls from the prison, which were recorded and introduced as evidence at trial. Among other things, Appellant made phone calls attempting to locate Thompson in the prison system and describing threats made from the audience to Thompson during the preliminary hearing. Among other things captured on audiotape, Appellant was upset that Thompson was talking to the detectives....

*Commonwealth v. Harris*, 113 A.3d 349, 1662 EDA 2013 (Pa. Super. filed

November 14, 2014) (unpublished memorandum at *1-2) (quoting Trial Court

Opinion, 1/2/14, at 1–4) (internal citations, footnotes, quotation marks, and

emphases omitted).

On November 9, 2012, a jury found Appellant guilty of attempted murder, conspiracy to commit murder, aggravated assault, conspiracy to commit aggravated assault, possession of a firearm by a prohibited person, possession of a firearm without a license, carrying a firearm in public in Philadelphia, and possession of an instrument of crime ("PIC").[1]

On January 28, 2013, the trial court sentenced Appellant to a term of twenty to forty years of incarceration for attempted murder pursuant to the sentencing enhancement in 18 Pa.C.S. § 1102(c), and a consecutive term of five to ten years of incarceration for possession of a firearm by a prohibited person.  N.T. (Sentencing), 1/28/13, at 39-40.  Additionally, the trial court imposed sentences of three and one-half to seven years of incarceration for possession of a firearm without a license, two and one-half to five years of incarceration for carrying a firearm in public in Philadelphia, and two and one-half to five years of incarceration for PIC.  *Id.* at 40.  The sentences for possession of a firearm without a license, carrying a firearm in public in Philadelphia, and PIC were ordered to be served concurrently with each other and concurrently with the sentence for attempted murder.  *Id.*  The convictions for conspiracy to commit murder, aggravated assault, and conspiracy to commit aggravated assault merged for sentencing purposes.

---

[1] 18 Pa.C.S. §§ 901(a), 903, 2702(a), 903, 6105(a)(1), 6106(a)(1), 6108, and 907(a), respectively.

*Id.* at 6. This resulted in an aggregate sentence of twenty-five to fifty years of incarceration. *Id.* at 40.

On January 30, 2013, Appellant filed a timely post-sentence motion that the trial court denied on May 7, 2013. On June 6, 2013, Appellant filed a timely appeal, and on November 14, 2014, this Court affirmed Appellant's judgment of sentence. *Harris*, 1662 EDA 2013 (unpublished memorandum at *1-2). Appellant did not file a petition for allowance of appeal in our Supreme Court.

On November 3, 2015, Appellant filed his first PCRA petition. On June 30, 2017, the PCRA court dismissed Appellant's petition. In the order, the PCRA court incorrectly directed that Appellant "may proceed pro se or with retained counsel; no new counsel is to be appointed." Order, 6/30/17, n.1. The denial of counsel was erroneous because Appellant had a right to counsel to pursue an appeal from the order denying his first PCRA petition. *See* Pa.R.Crim.P. 904(C), (F)(2) (explaining that the PCRA court shall appoint counsel to represent an indigent defendant on his first PCRA petition, and the appointment shall continue through any appeal from the disposition of the PCRA petition); *see also Commonwealth v. Robinson*, 970 A.2d 455 (Pa. Super. 2009) (*en banc*) (discussing the rule-based right to counsel on a first PCRA petition and stressing the importance of counsel in litigating a first PCRA petition). Despite the denial of counsel, Appellant filed a timely *pro se* appeal

on July 12, 2017. However, on March 16, 2018, our Court dismissed Appellant's *pro se* appeal due to his failure to file a brief.

On January 31, 2019, Appellant filed a *pro se* PCRA petition asserting that by denying Appellant his right to counsel, the PCRA court interfered with his right to pursue an appeal from the June 30, 2017 order denying his first PCRA petition. PCRA Petition, 1/31/19. Appellant contended that the PCRA court's interference satisfied an exception to the timing requirements of the PCRA pursuant to 42 Pa.C.S. § 9545(b)(1)(i).[2] PCRA Petition, 1/31/19. On October 1, 2019, the PCRA court granted Appellant's PCRA petition and reinstated Appellant's right to appeal the June 30, 2017 order denying his PCRA petition *nunc pro tunc.*[3] In a separate order filed on October 1, 2019,

_____

[2] A PCRA petition must be filed within one year of the date that the judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). A judgment of sentence "becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). However, the jurisdictional time bar can be overcome only by satisfaction of one of the three statutory exceptions codified at 42 Pa.C.S. § 9545(b)(1)(i)-(iii). Herein, the exception Appellant asserted was the governmental interference exception, which provides as follows: "the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States[.]" 42 Pa.C.S. § 9545(b)(1)(i).

[3] We note that in his January 31, 2019 PCRA petition, Appellant averred that he filed a petition for a writ of *habeas corpus* in federal court after he learned that this Court dismissed his PCRA appeal for failure to file a brief on March 16, 2018. Appellant states that in response to his filing in federal court (**Harris v. Marsh**, 18-CV-2293), the Commonwealth conceded Appellant was

the PCRA court appointed counsel to represent Appellant in his appeal. On October 8, 2019, Appellant filed a counseled notice of appeal *nunc pro tunc* from the June 30, 2017 order denying his PCRA petition. Both the PCRA court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant abandoned the issues raised in his Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and he instead presents the following issue for our consideration:

1. Did the [PCRA] court err and abuse its discretion when [it] dismissed [Appellant's] PCRA petition, though the trial court's sentence was illegal?

Appellant's Brief at 5 (full capitalization omitted).

Generally, any issue not raised in a Pa.R.A.P. 1925(b) statement is waived on appeal. **Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005); **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998). However, issues related to the legality of a sentence are not subject to waiver and may

_____

entitled to counsel and should have his appellate rights reinstated. PCRA Petition, 1/31/19, at ¶ 8; Exhibit C (Commonwealth's Response to Petition for Habeas Corpus). Appellant asserted that on January 11, 2019, the federal court stayed the *habeas corpus* proceedings to allow the underlying PCRA petition to proceed in the PCRA court. **Id.** In its brief on appeal, the Commonwealth does not challenge Appellant's contentions regarding the action in federal court. The PCRA court provides no details surrounding its conclusion that Appellant's January 31, 2019 PCRA petition was timely or that it satisfied an exception to the filing requirements in 42 Pa.C.S. § 9545(b)(1)(i)-(iii). However, based on the record before us, we discern no basis upon which to conclude that the PCRA court erred in concluding that Appellant's PCRA petition satisfied an exception enumerated in 42 Pa.C.S. § 9545(b)(1), or in restoring Appellant's PCRA appeal rights *nunc pro tunc*. Accordingly, we proceed with our discussion.

be considered *sua sponte*. ***Commonwealth v. Bezick***, 207 A.3d 400, 402 n.2 (Pa. Super. 2019) (citations omitted). Because Appellant challenges the legality of his sentence, we proceed with our discussion.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's ruling is free of legal error. ***Commonwealth v. Staton***, 184 A.3d 949 (Pa. 2018). We consider the record in the light most favorable to the prevailing party in the PCRA court. ***Commonwealth v. Mason***, 130 A.3d 601 (Pa. 2015). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. ***Commonwealth v. Rigg***, 84 A.3d 1080, 1084 (Pa. Super. 2014).

Herein, Appellant contends that the sentence of twenty to forty years of incarceration for attempted murder was illegal. Appellant's Brief at 9-10. The determination as to whether the trial court imposed an illegal sentence is a question of law; our scope of review is plenary, and our standard of review is *de novo*. ***Commonwealth v. Derrickson***, 242 A.3d 667, 673 (Pa. Super. 2020).

As noted, the trial court sentenced Appellant to a term of twenty to forty years of incarceration for his conviction of attempted murder pursuant to 18 Pa.C.S. § 1102(c). Section 1102(c) provides, in relevant part, as follows:

> **(c) Attempt, solicitation and conspiracy**.-- … a person who has been convicted of attempt … to commit murder … **where**

> **serious bodily injury results** may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years. Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 20 years.

18 Pa.C.S. § 1102(c) (emphasis added). Appellant asserts that before a court may impose a maximum sentence of forty years of incarceration, the Commonwealth must prove that "serious bodily injury" resulted from the attempted murder. Appellant's Brief at 10 (citing **Commonwealth v. Barnes**, 167 A.3d 110 (Pa. Super. 2017)). Moreover, Appellant argues that the Commonwealth must provide notice of its intention to prove the existence of serious bodily injury before the forty-year maximum sentence applies. **Id.**

Appellant contends that the Commonwealth charged him with attempted murder, but the criminal information did not reference 18 Pa.C.S. § 1102(c) or include that the victim, Gwendolyn Knox ("Knox"), suffered serious bodily injury. Appellant's Brief at 10. Therefore, Appellant claims he did not have notice that the Commonwealth sought to prove serious bodily and pursue the forty-year maximum. **Id.** Further, Appellant asserts that the "jury was never presented with, nor rendered a decision on, the question of whether a serious bodily injury resulted from the attempted murder." **Id.** at 10-11.

In **Barnes**, this Court held that pursuant to **Apprendi v. New Jersey**, 530 U.S. 466 (2000),[4] serious bodily injury is a fact that must be proven before a maximum sentence of forty years may be imposed for attempted murder, and the defendant must be put on notice when the Commonwealth seeks a forty-year maximum sentence. **Barnes**, 167 A.3d at 116 (citing **Commonwealth v. Reid**, 867 A.2d 1280 (Pa. Super. 2005)). Additionally, this Court explained that the jury's finding of serious bodily injury for the separate crime of aggravated assault may not be used to infer a finding of serious bodily injury relative to attempted murder. **Barnes**, 167 A.3d at 119.

After review, we conclude that Appellant's claim that the jury never addressed or rendered a decision on the issue of serious bodily injury relative to attempted murder is specious. First, the record reflects that Appellant stipulated that Knox sustained a gunshot wound to her face, required the placement of a stent in her carotid artery, and suffered a broken jaw, fractured vertebrae, brain bleeding, and a non-paralytic stroke. N.T. (Trial), 11/6/12, 73-79. The stipulation also included that Knox requires ongoing physical therapy due to the injuries she suffered. **Id.** at 79.

---

[4] In **Apprendi**, the Supreme Court of the United States held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." **Apprendi**, 530 U.S. at 490.

Moreover, in rendering its guilty verdict on the charge of attempted murder, the jury specified that it found Knox suffered serious bodily injury:

> COURT CRIER: May the foreperson please rise. Would the defendant please rise. Mr. Foreperson, has the jury reached a verdict?
>
> THE FOREPERSON: Yes, we have.
>
> COURT CRIER: Have all 12 of you agreed on the verdict?
>
> THE FOREPERSON: Yes, we have.
>
> COURT CRIER: To this CP-51-CR-000498-2012, charging [Appellant] with a [sic] **attempted murder** what is verdict, guilt[y] or not guilty?
>
> THE FOREPERSON: Guilty.
>
> THE COURT: And if you find guilty of attempted murder **was serious bodily injury caused to Gwendolyn Knox?** What is the verdict, yes or no.
>
> THE FOREPERSON: **Yes.**

N.T. (Trial), 11/9/12, at 76 (emphases added). In light of the jury's specific finding and Appellant's stipulation, we conclude that the Commonwealth presented proof beyond a reasonable doubt that Knox suffered serious bodily injuries as a result of the attempted murder.

With respect to notice, we agree with Appellant that the criminal information failed to inform Appellant of the Commonwealth's intention to prove serious bodily injury and seek a maximum sentence of forty years of incarceration. However, although the criminal information was deficient with respect to notice, we conclude that this flaw was not fatal.

In **Commonwealth v. King**, 234 A.3d 549 (Pa. 2020), our Supreme Court addressed a similar scenario. In **King**, the criminal information failed to provide the defendant notice of the Commonwealth's intention to pursue the forty-year maximum sentence due to serious bodily injury and made no reference to 18 Pa.C.S. § 1102(c). **King**, 234 A.3d at 553. In that case, the Commonwealth averred that any deficiency in the criminal information was harmless because "the evidence of serious bodily injury was 'overwhelming and uncontested,'" because the parties stipulated to the severity of the victim's injuries. **Id.** at 559. Additionally, the Commonwealth asserted that the defense was not impaired by a lack of formal notice because the defendant's strategy was that another individual committed the shooting. **Id.**

After review, our Supreme Court agreed with the Commonwealth that the failure to provide notice regarding Section 1102(c) was harmless:

> Having found that the criminal information failed to adequately apprise King of the Commonwealth's intention, we turn to the question of remedy. As acknowledged by both parties, the element of serious bodily injury in connection with attempted murder was indeed submitted to the jury and found beyond a reasonable doubt as indicated on the jury's verdict sheet. The question becomes whether the absence of that fact from the indictment or information requires a finding that the resulting sentence for the aggravated crime was illegal.
>
> We hold that it does not. That the Commonwealth's information was insufficient as a matter of due process notice does not resolve whether the conviction at trial was illegally secured. As previously noted, the indictment sets the stage for trial and what the Commonwealth intends to prove. … [W]e conclude that King was adequately apprised through other means of the Commonwealth's intentions and that the charging error was harmless beyond a reasonable doubt.

*King*, 234 A.3d at 563.

After review, we conclude that any error with respect to deficiencies in the criminal information was harmless beyond a reasonable doubt. Similar to the circumstances evident in *King*, in the instant case, Appellant had "*de facto*" notice that Knox suffered serious bodily injuries as a result of the attempted murder. *See King*, 234 A.3d at 566 ("King received *de facto* notice, at various points before trial, that the Commonwealth was seeking the enhancement. For example, the factual summaries in the charging documents made clear that [the victim] suffered serious bodily injury."). Herein, the complaint and affidavit of probable cause supporting Appellant's arrest warrant reveal that the Commonwealth alleged Appellant shot Knox in the face and that Knox remained in critical condition at Albert Einstein Medical Center. Affidavit of Probable Cause, 12/27/11; Complaint, 12/27/11.

Additionally, as in *King*, the evidence of serious bodily injury was both overwhelming and uncontroverted. *King*, 234 A.3d at 566. Herein, Appellant stipulated to the severity of Knox's injuries, and more importantly, the jury concluded that the Commonwealth proved serious bodily injury beyond a reasonable doubt. N.T. (Trial), 11/6/12, at 73-79; 11/9/12, at 76. Moreover, similar to *King*, Appellant's defense at trial was that Appellant was not the shooter, and trial counsel's focus was on assailing the credibility of the Commonwealth's witnesses. N.T. (Trial), 11/6/12, at 39-44. Thus, the Commonwealth's failure to provide formal notice of its intent to seek the

enhanced sentence did not affect Appellant's defense. **See King**, 234 A.3d at 566 ("We also find persuasive the Commonwealth's point that its failure to provide formal notice of its intent to seek the enhanced sentence did not affect King's choice of defense … considering King stipulated to [the victim's] injuries and instead sought to demonstrate that another unknown individual committed the crime."). Finally, Appellant never argued that Knox did not suffer serious bodily injury, and Appellant did not challenge the range of applicable sentences. In light of our Supreme Court's holding in **King**, and after our review of the record, we conclude that the deficient criminal information was harmless error. **King**, 234 A.3d at 566.

For the reasons set forth above, we conclude that serious bodily injury was established beyond a reasonable doubt. Any deficiency in the criminal information was harmless beyond a reasonable doubt, and "the harmless nature of the error precludes a finding that the sentence was illegally imposed." **King**, 234 A.3d at 566. Therefore, we discern no basis upon which to disturb Appellant's sentence for attempted murder. Accordingly, Appellant is entitled to no relief, and we affirm the June 30, 2017 order denying his PCRA petition.

Order affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/16/2021