J-A25019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MELVIN ORTIZ | : | |
| | : | |
| Appellant | : | No. 2086 MDA 2018 |

Appeal from the Judgment of Sentence Entered June 21, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0001050-1998

BEFORE:    BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:                **FILED: JANUARY 11, 2022**

Appellant, Melvin Ortiz, appeals from the June 21, 2018 judgment of sentence, as made final by the denial of Appellant's post-sentence motion on November 26, 2018.[1]  We affirm Appellant's judgment of sentence but vacate the order denying Appellant's post-sentence motion, in part, and remand this case for further proceedings in accordance with this memorandum.[2]

---

[1] A review of Appellant's notice of appeal demonstrates that he sought to appeal from the November 26, 2018 order denying his post-sentence motion. **See** Notice of Appeal, 12/20/18.  It is well-settled that "[i]n a criminal action, [an] appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (citation omitted), *appeal denied*, 800 A.2d 932 (Pa. 2002).  Therefore, Appellant's appeal lies from the June 21, 2018 judgment of sentence.  The caption has been corrected accordingly.

[2] The trial court order disposing of Appellant's post-sentence motion on November 26, 2018, denied a portion of Appellant's post-sentence motion that

The record demonstrates that on May 28, 1999, a jury convicted Appellant of second-degree murder, robbery, aggravated assault (death or serious bodily injury caused), recklessly endangering another person, possession of an instrument of crime, criminal attempt to commit theft by unlawful taking, and criminal conspiracy.[3] Appellant's convictions arose from the shooting death of a victim during an attempted robbery of a restaurant in Reading, Pennsylvania on December 23, 1997. At the time of the incident, Appellant was 17 years old. On June 15, 1999, the trial court sentenced Appellant to life imprisonment without parole for second-degree murder, as well as 10 to 20 years' incarceration for conspiracy to commit robbery and 2½ to 5 years' incarceration for possession of an instrument of crime. The trial court imposed the latter two sentences consecutive to Appellant's life sentence.[4] In total, Appellant's aggregate sentence was life imprisonment

---

raised a claim of after-discovered evidence. For reasons discussed more fully *infra*, the trial court should have treated this aspect of Appellant's post-sentence motion as a petition pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Because the trial court did not address Appellant's claim alleging after-discovered evidence under the correct legal framework, we vacate that portion of the November 26, 2018 order and remand for further proceedings consistent with this memorandum.

[3] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(i), 2702(a)(1), 2705, 907(a), 901, and 903(a)(1) and (2), respectively. The jury found Appellant not guilty of third-degree murder, 18 Pa.C.S.A. § 2502(c), and aggravated assault (bodily injury caused with a deadly weapon), 18 Pa.C.S.A. § 2702(a)(4).

[4] Appellant's convictions of robbery, aggravated assault (death or serious bodily injury caused), recklessly endangering another person, and criminal attempt to commit theft by unlawful taking merged for sentencing purposes.

followed by 22½ to 45 years' imprisonment. This Court affirmed Appellant's

judgment of sentence, and Appellant did not seek discretionary review with

our Supreme Court. *See Commonwealth v. Ortiz*, 1145 MDA 1999

(Pa. Super. Filed June 13, 2000) (unpublished memorandum).

Between May 2001, and October 2012, Appellant filed five PCRA

petitions, as well as a petition for *writ* of *habeas corpus* in the United States

District Court for the Eastern District of Pennsylvania. Ultimately, Appellant

was denied relief on each petition. On February 8, 2016, Appellant filed his

sixth PCRA petition, alleging,

> I am eligible for relief because I was 17 years of age at the time
> of the offense and imposition of a sentence of mandatory life in
> prison [without parole] is a violation of the Eighth Amendment's
> prohibition against cruel and unusual punishment and Article I,
> Section 13 of the [Pennsylvania] Constitution as interpreted by
> *Miller v. Alabama*, [567 U.S. 460 (2012)]. On January 25, 2016,
> the United States Supreme Court[, in *Montgomery v. Louisiana*,
> 136 S.Ct. 718 (2016),] held [that the] *Miller* decision [was]
> retroactive to collateral review. In addition, I am eligible for relief
> based on the Commonwealth's suppression of information
> material to [my] defense in violation of *Brady v. Maryland*, 373
> U.S. 83 [] (1963) and *Smith v. Cain*, [565 U.S. 73 (2012).]

Appellant's PCRA Petition, 2/8/16, at ¶6. Appellant's PCRA petition set forth

two grounds for relief. *See* Appellant's Memorandum of Law Supporting PCRA

Petition, 2/8/16, at unnumbered pages 19-22. Appellant's first ground for

relief requested resentencing based upon the claim that Appellant's current

---

Appellant was also ordered to pay a $1,000.00 fine and $17,830.03 in
restitution.

- 3 -

sentence of mandatory life imprisonment without parole violated the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution pursuant to *Miller*, *supra*, which was held to apply retroactively in *Montgomery*, *supra*. Appellant's Memorandum of Law Supporting PCRA Petition, 2/8/16, at unnumbered pages 19-20. Appellant's second ground for relief sought a new trial on the basis that the Commonwealth's nondisclosure of certain material violated Appellant's due process rights under the Fifth, Sixth, and Fourteenth Amendments pursuant to *Brady*, *supra*, and *Giglio v. United States*, 405 U.S. 150 (1972). Appellant's Memorandum of Law Supporting PCRA Petition, 2/8/16, at unnumbered pages 20-22.

On February 18, 2016, the PCRA court granted Appellant's petition, in part, pursuant to *Miller*, *supra*, and *Montgomery*, *supra*.[5] As to Appellant's *Brady* claim, the PCRA court ordered the Commonwealth to file an answer to Appellant's request for a new trial within 30 days. *See* PCRA Court Order, 2/18/16. In the meantime, the trial court stayed Appellant's resentencing pending our Supreme Court's decision in *Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017) ("*Batts II*").

_____

[5] The Commonwealth's answer to Appellant's PCRA petition is not part of the certified record. The trial court, however, stated that, "[t]he Commonwealth conceded [Appellant's] position and the [o]rder granting relief under [g]round [o]ne was entered without the need for a hearing or argument." Trial Court Opinion, 12/9/19, at ¶11; *see also* Appellant's Reply to Commonwealth's Answer to PCRA Petition, 3/28/16, at unnumbered page 1 (stating, "[t]he Commonwealth agree[d] at page 6 of its [answer to Appellant's PCRA petition] that [Appellant] is entitled to be resentenced [pursuant to *Miller*, *supra*, and *Montgomery, supra*]").

On April 12, 2018, the PCRA court denied Appellant's petition as to the *Brady* claim. *See* PCRA Court Order, 4/12/18. On June 21, 2018, the trial court resentenced Appellant to a term of 35 years to life imprisonment for his conviction of second-degree murder.[6] The trial court also resentenced Appellant to 2½ to 5 years' incarceration for possession of an instrument of crime and 10 to 20 years' incarceration for conspiracy to commit robbery. The latter two sentences were to run concurrent to Appellant's sentence for second-degree murder.[7] Appellant's newly-imposed aggregate sentence was now 35 years to life imprisonment.

On June 29, 2018,[8] Appellant filed a post-sentence motion pursuant to Pennsylvania Rule of Criminal Procedure 720 requesting a new trial based upon after-discovered evidence or, in the alternative, a modification of his sentence on the grounds that, *inter alia*, the trial court miscalculated his prior record score and his sentence was excessive. Appellant's Post-Sentence Motion, 6/29/18, at 17-27. On October 11, 2018, the trial court granted Appellant's motion to extend the disposition period in which to decide the

---

[6] Appellant received credit for time served of 7,462 days. *See* Resentencing Order, 6/21/18.

[7] Appellant was again ordered to pay $17,830.03 in restitution. *See* Restitution Order, 6/21/18.

[8] Appellant's post-sentence motion is time-stamped as having been received on June 29, 2018, and on July 27, 2018. A review of the trial court docket demonstrates that the post-sentence motion was, in fact, received on June 29, 2018.

post-sentence motion and ordered that the time for decision be extended thirty days. *See* Trial Court Order, 10/11/18. Ultimately, the trial court denied Appellant's post-sentence motion on November 26, 2018. On December 20, 2018, Appellant filed a notice of appeal. The trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant timely complied. The trial court subsequently filed its Rule 1925(a) opinion on December 9, 2019.

Appellant raises the following issues for our review:

[1.] Whether the [trial] court erred in denying [Appellant's] post-sentence motion?

    A. Whether the [trial] court erred in denying [Appellant's] motion for [a] new trial based on after[-]discovered evidence?

    B. Whether the [trial] court erred in denying [Appellant's] motion to modify [his] sentence?

[2.] Whether the [PCRA] court erred in denying [Appellant's] claim presented in his [sixth] PCRA petition that the Commonwealth violated *Brady*[, *supra*,] and *Giglio*[, *supra*,] when it withheld the full extent of John Caltagirone's criminal record during the trial and failed to correct Caltagirone's trial testimony that most of his contact with law enforcement had been as a victim and whether the appeal of this issue is timely where no [Pennsylvania Rule of Criminal Procedure] 907 notice was issued [before] this claim was denied?

Appellant's Brief at 3 (extraneous capitalization omitted).

Before we address the merits of Appellant's contentions, we recount the relevant procedural developments that preceded this appeal, as these events

- 6 -

shape the course and scope of our review. In June 1999, Appellant was sentenced to an aggregate term of life imprisonment followed by 22½ to 45 years' incarceration for second-degree murder and related offenses, which were committed when Appellant was 17 years of age. Fast-forward nearly two decades, five unsuccessful PCRA petitions, and one unsuccessful petition for *writ* of *habeas corpus*, and Appellant filed his sixth PCRA petition on February 8, 2016. In his sixth PCRA petition, Appellant raised a claim alleging that his sentence of mandatory life imprisonment without parole was illegal pursuant to *Miller, supra*, and *Montgomery, supra*, because he was 17 years old when the crimes were committed. Appellant also claimed that the Commonwealth violated his constitutional rights pursuant to *Brady, supra*, and its progeny, by failing to disclose certain material. Ultimately, the PCRA court granted Appellant relief pursuant to *Miller, supra*, and *Montgomery, supra*, but denied his *Brady* claim. Appellant did not appeal the PCRA court's April 12, 2018 order denying his *Brady* claim.[9]

While Appellant awaited resentencing, a recanting witness, as more fully discussed *infra*, executed an affidavit on April 24, 2018, in which she recanted her trial testimony and, for the first time, identified the shooter as someone

---

[9] A PCRA court's final order ending a collateral proceeding and calling for a new sentence, which is a trial court function and not a function of a collateral proceeding, terminates the PCRA court's role in the proceeding and shifts the proceeding back to the trial court. *See Commonwealth v. Gaines*, 127 A.3d 15, 17-18 (Pa. Super. 2015) (*en banc*). Hence, the April 12, 2018 order denying Appellant's *Brady* claim constituted a final, appealable order disposing of Appellant's sixth PCRA petition. *See* Pa.R.Crim.P. 910.

other than Appellant. Appellant first raised this after-discovered evidence, namely the recanting witness's affidavit, during his resentencing hearing on June 21, 2018. At the resentencing hearing, counsel for Appellant asked the trial court, prior to imposing Appellant's new sentence, to consider the "circumstances of the homicide offense, including the extent of [Appellant's] participation in [committing the offense.]" N.T., 6/21/18, at 21. Counsel submitted the recanting witness's affidavit as after-discovered evidence of Appellant's innocence in the shooting death of the victim. *Id.* at 22. Counsel also attempted, unsuccessfully, to present the testimony of the recanting witness at the resentencing hearing. *Id.* at 24. The Commonwealth asserted that recantation of the witness' trial testimony was the subject of Appellant's second and fourth PCRA petitions, which were ultimately denied. *Id.* at 25. The Commonwealth argued that Appellant's introduction of the recanting witness's affidavit and the attempt to have the recanting witness testify at the resentencing hearing was an effort to "open [the] door to a second bite at the apple [of the] PCRA issues that [were previously] resolved." *Id.* at 26. Ultimately, the trial court accepted for consideration the recanting witness's affidavit but denied Appellant's request to present the testimony of the recanting witness at the resentencing hearing. *Id.* at 27. The trial court resentenced Appellant to an aggregate term of 35 years to life imprisonment. *Id.* at 44-45.

On June 29, 2018, Appellant filed a post-sentence motion pursuant to Rule 720 that requested a new trial based upon after-discovered evidence or,

alternatively, requested a modification of his newly-imposed sentence. Appellant's Post-Sentence Motion, 6/29/18, at 17-26. Appellant asserted that Rule 720(C) permitted a new trial based upon after-discovered evidence and that the recanting witness's affidavit constituted after-discovered evidence that satisfied the applicable four-part test for relief.[10] *Id.* at 17-23. Alternatively, Appellant raised claims alleging that the trial court erroneously treated his three prior juvenile adjudications as felony convictions and failed to consider Appellant's rehabilitation and reform, as well as the degree of Appellant's participation in the crime. *Id.* at 23-26.

At a hearing on Appellant's post-sentence motion, the Commonwealth objected to Appellant's request for a new trial based upon after-discovered evidence, arguing that the law of the case doctrine[11] prevented the current

---

[10] To receive a new trial based on after-discovered evidence, a petitioner (or a defendant, depending upon the procedural posture of the case) must satisfy a four-part test requiring:

> the petitioner [(or defendant)] to demonstrate the [after-discovered] evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018), *citing Commonwealth v. Pagan*, 950 A.2d 270 (Pa. 2008), *cert. denied*, 555 U.S. 1198 (2009).

[11] The law of the case doctrine "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a

trial court from finding that the recanting witness's affidavit established the newly-discovered facts exception to the PCRA jurisdictional time-bar because this Court previously held that similar evidence demonstrating the recanting witness lied at trial proved unsuccessful in establishing an exception to the PCRA jurisdictional time-bar. N.T., 10/10/18, at 2-16; **see also** Commonwealth's Memorandum, 10/19/18, at 7-10. In so arguing, the Commonwealth asserted, in essence, that Appellant was procedurally barred from raising an after-discovered evidence claim in the context of a post-sentence motion pursuant to Rule 720(C) and, instead, was required to raise such a claim in the context of a subsequent PCRA petition, which, according to the Commonwealth, would be untimely and without exception to the jurisdictional time-bar. According to the Commonwealth, the trial court, therefore, did not have jurisdiction to address Appellant's claim surrounding the after-discovered evidence because Appellant was not permitted to file such a claim in a post-sentence motion following resentencing and, even if the post-sentence motion were deemed a PCRA petition,[12] such a petition, or any subsequent petition, raising the after-discovered evidence claim was untimely and without exception.

---

higher court in the earlier phases of the matter." **Commonwealth v. Starr**, 664 A.2d 1326, 1331 (Pa. 1995).

[12] In **Commonwealth v. Wrecks**, this Court stated that any submission filed after a judgment of sentence became final should be treated as a PCRA petition if it requested relief contemplated by the PCRA. **Commonwealth v. Wrecks**, 934 A.2d 1287, 1289 (Pa. Super. 2007).

Appellant argued that the trial court had jurisdiction over the after-discovered evidence claim because Rule 720(C) permitted Appellant to file a post-sentence motion raising an after-discovered evidence claim subsequent to his resentencing. N.T, 10/10/18, at 6 (arguing that, Appellant's after-discovered evidence claim is "appropriately before the [trial court] in a Rule 720 motion"). Appellant asserted that, upon his resentencing, he now had a new judgment of sentence "and with [that new judgment of sentence] comes the right to make new challenges to the conviction[,] as well as the sentence."[13] Appellant's Memorandum of Law in Support of After-Discovered Evidence Claim, 10/23/18, at unnumbered page 5. In other words, Appellant argued that his newly-imposed sentence "reset" the date of his judgment of sentence for purposes of determining "final judgment" within the context of the PCRA.

Ultimately, the trial court overruled the Commonwealth's jurisdictional objection and considered the merits of Appellant's post-sentence motion pursuant to Rule 720(C). Trial Court Order, 11/16/18. On November 26, 2018, the trial court denied Appellant's post-sentence motion, including Appellant's request for a new trial based upon after-discovered evidence and

_____

[13] We are cognizant that a defendant has a constitutional right to appeal his judgment of sentence imposed upon resentencing, however, the direct appeal of that judgment of sentence is limited to those matters implicated by his resentencing. *Commonwealth v. McKeever*, 947 A.2d 782, 786 (Pa. Super. 2008).

his request for a modification of sentence. Trial Court Order, 11/26/18. On December 20, 2018, Appellant filed a notice of appeal.

We first consider Appellant's claim that the trial court erred in denying his post-sentence motion to modify his sentence. Here, Appellant argues that the trial court erroneously considered his juvenile adjudications when calculating his prior record score. Additionally, Appellant alleges that his punishment was excessive because the court failed to consider such factors as Appellant's rehabilitation and reform. Appellant's Post-Sentence Motion, 6/29/18, at 24-26. These claims challenge the discretionary aspects of Appellant's sentence. *See Commonwealth v. Sanchez*, 848 A.2d 977, 986 (Pa. Super. 2004) (stating that, any misapplication of sentencing guidelines, including a miscalculation of a prior record score, constitutes a challenge to the discretionary aspects of a sentence); *see also Commonwealth v. Derrickson*, 242 A.3d 667, 679 (Pa. Super. 2020) (stating, this Court considers claims that the trial court failed to consider relevant sentencing factors, such as rehabilitation, seriousness of offense, and prior juvenile record, under the discretionary-aspects-of-sentence analysis).

Several well-established principles apply when we review challenges to the discretionary aspects of a sentence.

> The right to appeal the discretionary aspects of a sentence is not absolute. To determine whether an appellant [] properly preserved the discretionary aspects of sentencing for appellate review, we must conduct the following four-part analysis: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has

- 12 -

a fatal defect[, Pa.R.A.P. 2119(f)]; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis. Generally, however, in order to establish a substantial question, the appellant must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process.

***Derrickson***, 242 A.3d at 679 (citation and original brackets omitted). If an appellant fails to file a brief containing a Rule 2119(f) statement[14] but the Commonwealth does not file an objection, this Court can (1) deny the petition for allowance of an appeal for failure to invoke this Court's jurisdiction to review the challenge to the discretionary aspects of sentence, (2) waive the procedural defect and consider whether a substantial question exists, or (3) direct the appellant to file a supplemental Rule 2119(f) statement. ***Commonwealth v. Penrod***, 578 A.2d 486, 490 (Pa. Super. 1990).

Here, Appellant filed a timely notice of appeal and properly preserved his challenge to the discretionary aspects of his sentence in his post-sentence motion. ***See*** Appellant's Post-Sentence Motion, 6/29/18. Appellant, however, failed to include a Rule 2119(f) statement in his brief, which amounts to a

_____

[14] Pennsylvania Rule of Appellate Procedure 2119(f) requires "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter [to] set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of the sentence." Pa.R.A.P. 2119(f). The failure to include a Rule 2119(f) statement in the brief amounts to a procedural defect.

procedural defect, to which the Commonwealth did not object. Nonetheless, a review of the argument set forth in Appellant's brief allows this Court to determine whether a substantial question exists. Consequently, we waive Appellant's procedural defect. **See Commonwealth v. Gambal**, 561 A.2d 710, 713 (Pa. 1988) (stating, an appellate court may waive the procedural defect when the failure to file a Rule 2119(f) statement does not significantly hamper the appellate court's ability to determine whether a substantial question exists).

Appellant also presents colorable claims that his sentence was contrary to the Sentencing Code or the fundamental norms of sentencing. For example, he argues that the trial court miscalculated his prior record score and that his sentence was excessive because the trial court failed to consider relevant factors, including his rehabilitation. **See** Appellant's Brief at 40-41. We have previously held that these claims present substantial questions for review. **See Commonwealth v. Johnson**, 758 A.2d 1214, 1216 (Pa. Super. 2000) (stating that, an allegation that a trial court misapplied sentencing guidelines in computing prior record score presents a substantial question); **see also Derrickson**, 242 A.3d at 680 (stating, "an averment that the [trial] court [imposed a sentence] based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question" (citation omitted)). Therefore, we proceed to consider the merits of Appellant's discretionary sentencing claim.

Sentencing is a matter vested in the sound discretion of the [trial court], and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the [trial] court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill[-]will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Blount***, 207 A.3d 925, 934-935 (Pa. Super. 2019) (citation omitted)*, appeal denied*, 218 A.3d 1198 (Pa. 2019). This Court's review of the discretionary aspects of a sentence is governed by Section 9781(c) and (d) of the Pennsylvania Sentencing Code. Section 9781, in pertinent part, states,

## § 9781. Appellate review of sentence

. . .

**(c) Determination on appeal.**--The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

**(d) Review of record.**--In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(c) and (d).

Here, Appellant argues that his prior record score was calculated as a two based upon the trial court's error that Appellant's prior juvenile delinquency adjudications constituted prior felony convictions. Appellant's Brief at 39. Appellant argues that a juvenile adjudication of delinquency is not a conviction of a crime and, therefore, cannot be considered a prior felony conviction for purpose of calculating a prior record score. *Id.* at 38-39.

Section 303.6 of the Pennsylvania Sentencing Guidelines, in pertinent part, states,

**§ 303.6. Prior Record Score--prior juvenile adjudications.**

(a) *Juvenile adjudication criteria.* Prior juvenile adjudications are counted in the Prior Record Score when the following criteria are met:

(1) The juvenile offense occurred on or after the offender's 14th birthday, and

(2) There was an express finding by the juvenile court that the adjudication was for a felony or one of the offenses listed in § 303.7(a)(4).

(b) Only the most serious juvenile adjudication of each prior disposition is counted in the Prior Record Score. No other prior juvenile adjudication shall be counted in the Prior Record Score.

204 Pa.Code § 303.6(a) and (b).

Here, at Appellant's sentencing hearing, a discussion with regard to Appellant's prior record score and his juvenile delinquency adjudications occurred as follows:

THE COURT: [] The presentence investigation [report] indicates things that I also have to consider [] that [Appellant] has a prior record score of two. He had an offense as a juvenile in 1994[,] and in 1995. And I reviewed that. [Attorney] Sturm, did you have a chance to review this [report?[15]]

[ATTY.] STURM: I did, Your Honor. Thank you.

THE COURT: Is it accurate?

[ATTY.] STURM: I consulted with [Appellant] and he says it is accurate, Your Honor.

THE COURT: Okay. [Attorney] Adams,[16] anything else with regard to the presentence [investigation] report?

[ATTY.] ADAMS: No. There were two offenses in 1994 and one offense in 1995. Yes. Nothing further.

THE COURT: Right. We have a felony three receiving stolen property as a juvenile and then a possession of a controlled substance as a juvenile in 1995.

[ATTY.] ADAMS: Correct.

THE COURT: Correct.

[ATTY.] ADAMS: There were two felony three[ adjudications].

---

[15] At his resentencing hearing, Appellant was represented by Attorney Cheryl J. Sturm, Esquire ("Attorney Sturm").

[16] Attorney John T. Adams, Esquire represented the Commonwealth at Appellant's resentencing hearing.

THE COURT:        Right.

[ATTY.] ADAMS: Yes.

THE COURT:        1994.

[ATTY.] ADAMS: Yes.

[ATTY.] STURM:  Yes, Your Honor, I would note that neither one was a crime of violence, but, yes this is an accurate record.

THE COURT:        Okay.  But it still gets your client to a two for a prior record score, correct?

[ATTY.] STURM:  Yes, Your Honor.

N.T., 6/21/18, at 33-34.

Pursuant to Section 303.6(a), these prior juvenile adjudications of delinquency were to be considered when calculating Appellant's prior record score.  Therefore, Appellant's prior record score was correctly calculated as a two.  *See* 204 Pa.Code § 303.7 (stating, one point is added to a prior record score for each prior juvenile adjudication for felony three offenses).  Moreover, Appellant agreed that in 1994, at 14 years old, he was adjudicated delinquent, as a juvenile, of two felony three crimes, that in 1995 he was adjudicated delinquent, as a juvenile, of one felony three crime, and, as a result, his prior record score was correctly calculated as a two.  N.T., 6/21/18, at 33-34.

We next examine Appellant's claim that the trial court abused its discretion in failing to consider relevant facts in imposing its sentence.  Section 1102.1(c)(1) of the Pennsylvania Crimes Code states that, "[a] person who at the time of the commission of the offense [of second-degree murder] was 15 years of age or older shall be sentenced to a term of imprisonment the

minimum of which shall be at least 30 years to life." 18 Pa.C.S.A. § 1102.1(c)(1). "[A] mandatory maximum life sentence is required for resentencing juvenile offenders convicted of second-degree murder" based upon our Supreme Court's decision in **Batts II**. **Derrickson**, 242 A.3d at 674, *relying on* **Commonwealth v. Seskey**, 170 A.3d 1105 (Pa. Super. 2017). While the trial court must impose, at a minimum, the sentencing requirements of Section 1102.1(c)(1), the trial court is afforded broad discretion in sentencing matters, as it is in the best position to evaluate the individual circumstances before it. **Derrickson**, 242 A.3d at 677-678. Section 1102.1(e) states,

> Nothing under this section shall prevent the sentencing court from imposing a minimum sentence **greater than** that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing may not supersede the mandatory minimum sentences provided under this section.

18 Pa.C.S.A. § 1102.1(e) (emphasis added). When a juvenile defendant is sentenced to a maximum term of life with a minimum term of imprisonment after which the defendant becomes parole-eligible, the trial court should consider the guidelines set forth in Section 1102.1(d).[17] **Derrickson**, 242 A.3d at 677-678.

---

[17] Although Section 1102.1 states that it is applicable to juvenile homicide defendants convicted post-**Miller**, this Court has held that because no sentencing guidelines exist for juvenile homicide defendants convicted prior to **Miller**, **supra**, the trial court should consider the guidelines of Section 1102.1(d). **See Derrickson**, 242 A.3d at 677-678.

Here, the trial court, in fashioning its sentence, stated,

> So the Commonwealth is requesting a sentence that falls squarely in the guidelines. I mean, under the guidelines it specifically says second[-]degree murder, if you are 15 years of age or older you are to be sentenced to a term of imprisonment and the minimum shall be at least 30 years to life, at least. It doesn't say 30 years [or] life. It says at least 30 years to life.

_____

Section 1102.1(d) states that the trial court shall consider:

> (1) The impact of the offense on each victim, including oral and written victim impact statements made or submitted by family members of the victim detailing the physical, psychological and economic effects of the crime on the victim and the victim's family. A victim impact statement may include comment on the sentence of the defendant.
>
> (2) The impact of the offense on the community.
>
> (3) The threat to the safety of the public or any individual posed by the defendant.
>
> (4) The nature and circumstances of the offense committed by the defendant.
>
> (5) The degree of the defendant's culpability.
>
> (6) Guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing.
>
> (7) Age-related characteristics of the defendant, including: (i) age[,] (ii) mental capacity[,] (iii) maturity[,] (iv) the degree of criminal sophistication exhibited by the defendant[,] (v) the nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant[,] (vi) probation or institutional reports[, and] (vii) other relevant factors.

18 Pa.C.S.A. § 1102.1(d) (formatting modified, extraneous capitalization due to formatting omitted).

N.T., 6/21/18, at 42.  The trial court considered, *inter alia*, the impact of the murder on the victim's family and the community, Appellant's culpability, Appellant's age ("only 13 days shy of his 18th birthday"), Appellant's home-life and mental capacity, the sophistication of the attempted robbery scheme, and all of the exhibits submitted by Appellant, including, *inter alia*, Appellant's rehabilitative achievements of obtaining his general educational development ("GED") certification and skills training in refrigeration, plumbing, and electrical shop.  *Id.* at 34-42 (reiterating, "I'm stating it on the record for the fifth time.  I have reviewed all of it").  Based upon the record, we discern no error of law or abuse of discretion in Appellant's sentence of 35 years to life imprisonment.  The trial court in fashioning its sentence complied with Section 1102.1(c)(1) and **Batts II**, and its progeny.

In short, for the reasons set forth herein, Appellant's issue challenging the discretionary aspects of his newly-imposed sentence is without merit.

We also reject any claim suggesting that Appellant's sentence was illegal because the trial court failed to consider the sentencing factors announced in **Miller**, **supra**.  **See** Appellant's Brief at 41-42 (stating, the trial court failed to consider the "nature and circumstances of [the] extent of [Appellant's] participation" (extraneous capitalization omitted)).  Appellant contends the trial court was required to consider that the shooting death of the victim was accidental and that Appellant was not the shooter, as supported by the recanting witness's identification of the shooter as someone other than Appellant.  *Id.* at 42.

- 21 -

Recently, this Court, in **Commonwealth v. Derrickson**, noted,

the specific constitutional issue in **Miller** [was] the mandatory nature of a sentence of life imprisonment when [S]ection 6137(a)(3) (which prohibits parole) is applied. Thus, [S]ection 6137(a)(3) cannot be applied to juveniles convicted of second-degree murder prior to June 25, 2012. Therefore, if a juvenile defendant[] is sentenced to a maximum term of life with a minimum term of imprisonment after which the defendant becomes parole-eligible, the constitutional concerns in **Miller** are not implicated.

**Derrickson**, 242 A.3d at 678-679 (citations, quotation marks, original brackets, and emphasis omitted). The **Derrickson** Court reiterated that, "[a] sentencing court must consider the **Miller** factors **only** in cases where the Commonwealth is attempting to meet its burden of overcoming the presumption against juvenile [life-without-parole] sentences." **Id.** at 679 (original quotation marks and original brackets omitted, emphasis added), *quoting* **Commonwealth v. White**, 193 A.3d 977, 986 (Pa. Super. 2018), *appeal denied*, 215 A.3d 3 (Pa. 2019); **see also Commonwealth v. DeJesus**, ___ A.3d ___, 2021 WL 4889071, at 3 (Pa. Super. 2021) (*en banc)* (stating that, the **Miller** factors must only be considered when seeking a juvenile life-without-parole sentence).

Here, the Commonwealth did not seek a sentence of life without the possibility of parole, and the trial court did not impose a life-without-parole sentence. **See** N.T., 6/21/18, at 6-7. Therefore, the trial court was not required to consider the **Miller** factors. **See Derrickson**, 242 A.3d at 679; **see also DeJesus**, 2021 WL 4889071, at *3.

We next consider Appellant's challenge to the PCRA court's April 12, 2018 order denying his sixth PCRA petition (filed February 8, 2016) as it pertained to his request for guilt-based relief pursuant to **Brady**, **supra**, and **Giglio**, **supra**. To reiterate the procedural posture of the case *sub judice* pertinent to this second issue, Appellant filed his sixth PCRA petition on February 8, 2016, requesting a new sentencing hearing, pursuant to **Miller**, **supra**, and **Montgomery**, **supra**, and guilt-based relief pursuant to **Brady**, **supra**, and **Giglio**, **supra**. On February 18, 2016, the PCRA court granted Appellant's PCRA petition, in part, as to resentencing relief. On May 31, 2016, Appellant filed a motion to bifurcate his request for guilt-based relief from the PCRA court's order granting resentencing relief in which Appellant acknowledged that when the PCRA court issues an order regarding the guilt-based relief, that order will be a final order and immediately appealable. **See** Appellant's Motion to Bifurcate, 5/31/16, at 2 (stating, "if the [PCRA court] denies the **Brady**/**Giglio** issues [] that order **would immediately become a final appeal[able] order**" (emphasis added)). The PCRA court granted Appellant's motion to bifurcate the issues on May 31, 2016, and on June 1, 2016, granted Appellant's motion to stay his resentencing pending our Supreme Court's decision in **Batts II**. On June 7, 2016, the PCRA court entertained argument on Appellant's **Brady**/**Giglio** issues. Appellant waived his appearance to attend the hearing, and Appellant's counsel indicated the same at the hearing. **See** PCRA Court Order, 5/31/16; **see also** N.T., 6/7/16, at 4-5. On April 12, 2018, the PCRA court denied the pending **Brady**/**Giglio**

issue in Appellant's PCRA petition, that is to say the issue related to guilt-based relief. *See* PCRA Court Order 4/12/18 (noting that, in addition to denying Appellant's request for guilt-based relief, Appellant had previously been granted, in part, post-collateral relief in the form of a new sentencing hearing). Because the April 12, 2018 order resolved all the post-conviction collateral relief claims of all the parties, this order constituted a final, appealable order. *See Commonwealth v. Bryant*, 780 A.2d 646, 647-648 (Pa. 2001) (holding that, when a PCRA court has entered an order, or a combination of orders, granting, in part, a new sentencing hearing, and an order denying, in part, guilt-based relief, the PCRA court has fully and finally disposed of all of the issues before it, thereby providing the defendant with a final order upon which an appeal properly lies); *see also* Pa.R.Crim.P. 910 (stating that, "[a]n order granting, denying, dismissing, or otherwise finally disposing of a petition for post-conviction collateral relief shall constitute a final order for purposes of appeal"); Pa.R.A.P. 341(a) (stating that, an appeal properly lies from a final order of the trial court); Pa.R.A.P. 341(b) (stating that, a final order is defined, *inter alia*, as an order that "disposes of all claims and of all parties"); Pa.R.A.P. 341(f)(1) (stating that, "[a]n order granting, denying, dismissing, or otherwise finally disposing of a petition for post-conviction collateral relief shall constitute a final order for purposes of appeal").

Because the April 12, 2018 order was a final, appealable order, Appellant had until May 14, 2018, in which to file a timely appeal of this final

order. **See** Pa.R.A.P. 903(a) (stating, a notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken"); **see also** 1 Pa.C.S.A. § 1908 (stating that, "[w]henever the last day of any [period of time referred in a statute or rule] shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation"). Appellant did not file an appeal purporting to challenge the PCRA court's final order until December 20, 2018. Consequently, the appeal is untimely, and this Court is without jurisdiction to review Appellant's second issue. **See Commonwealth v. Burks**, 102 A.3d 497, 500 (Pa. Super. 2014) (stating that, absent extraordinary circumstances, such as a court holiday or closing or a breakdown in the operations of the court, this Court has no jurisdiction to entertain an untimely appeal).[18]

In our final discussion, we consider Appellant's challenge to the trial court's disposition of his after-discovered evidence claim. Here, our analysis

---

[18] We are unpersuaded by Appellant's suggestion that his appeal from the April 12, 2018 order disposing of his PCRA petition should be deemed timely because the PCRA court did not issue a notice pursuant to Pa.R.Crim.P. 907. **See** Appellant's Brief at 43. Rule 907 compels the PCRA court to give notice to the parties if it intends to dismiss a petition without a hearing or adjudicative proceedings. **See** Pa.R.Crim.P. 907 (stating, the PCRA court "shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal"). In view of the extensive evidentiary development that was undertaken here, we conclude that Rule 907 has no application in the case before us.

begins with Pennsylvania Rule of Criminal Procedure 720, which states, in pertinent part,

### Rule 720.  Post-Sentence Procedures; Appeal

**(A) Timing.**

(1) Except as provided in paragraphs (C) and (D), a written post-sentence motion shall be filed no later than 10 days after imposition of sentence.

. . .

**(B) Optional Post-Sentence Motion.**

(1) *Generally.*

(a) The defendant in a court case shall have the right to make a post-sentence motion.  All requests for relief from the trial court shall be stated with specificity and particularity, and shall be consolidated in the post-sentence motion, which may include:

(i) a motion challenging the validity of a plea of guilty or *nolo contendere*, or the denial of a motion to withdraw a plea of guilty or *nolo contendere*;

(ii) a motion for judgment of acquittal;

(iii) a motion in arrest of judgment;

(iv) a motion for a new trial; and/or

(v) a motion to modify sentence.

. . .

**(C) After-Discovered Evidence.**  A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing **promptly** after such discovery.

Pa.R.Crim.P. 720 (emphasis added).

A plain-reading[19] of Rule 720 demonstrates that a defendant has an option[20] of filing a post-sentence motion, which raises, *inter alia*, a motion for a new trial or a motion to modify sentence, no later than ten days after the imposition of sentence. **See** Pa.R.Crim.P. 720(A)(1) and (B)(1)(a). An exception[21] to the 10-day filing requirement, however, exists for a post-sentence motion that requests a new trial based on after-discovered evidence, in which case, the post-sentence motion must be filed **promptly**

_____

[19]     When we interpret our Rules of Criminal Procedure, we employ the same principles employed in the interpretation of statutes. Pa.R.Crim.P. 101(C)[.] The object of interpretation of the criminal rules "is to ascertain and effectuate the intention" of our Supreme Court, as the rule-issuing body. "Every [rule] shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.[A.] § 1921(a). "When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.[A.] § 1921(b).

*Commonwealth v. Phillips*, 141 A.3d 512, 518 (Pa. Super. 2016) (case citations and original brackets omitted), *appeal denied*, 161 A.3d 796 (Pa. 2016).

[20] We recognize that while the filing of a post-sentence motion is optional, a defendant is required to file such a motion when challenging the verdict on weight of the evidence grounds or when the challenge involves the discretionary aspects of sentence in order to preserve such issues for appellate review. *Commonwealth v. Liston*, 977 A.2d 1089, 1094 n.9 (Pa. 2009).

[21] Pursuant to Rule 720(D), a post-sentence motion is not permitted to be filed in a summary case appeal following a trial *de novo* in the court of common pleas because the determination of guilt at the conclusion of the trial *de novo* constitutes a final order for purposes of appeal. Pa.R.Crim.P. 720(D) (stating, "There shall be no post-sentence motion in summary case appeals following a trial *de novo* in the court of common pleas. The imposition of sentence immediately following a determination of guilt at the conclusion of the trial *de novo* shall constitute a final order for purposes of appeal.").

after discovery of the after-discovered evidence. *See* Pa.R.Crim.P. 720(C); *see also Commonwealth v. Castro*, 93 A.3d 818, 828 (Pa. 2014) (stating that, Rule 720(C) "requires a motion for after-discovered evidence be filed promptly upon the discovery of such evidence"). A post-sentence motion raising an after-discovered evidence claim, notably, is not listed as an "optional" post-sentence motion under Rule 720(B)(1)(a). *Compare* Rule 720(B)(1)(a) *with* Rule 720(C). Rather, the official comment to Rule 720(C) states, in pertinent part,

> that any claim of after-discovered evidence must be raised **promptly** after its discovery. Accordingly, after-discovered evidence discovered during the post-sentence stage must be raised **promptly** with the trial [court] at the post-sentence stage; after-discovered evidence discovered during the direct appeal process must be raised **promptly** [with the appellate court] during the direct appeal process, and should include a request for a remand to the trial [court]; and **after-discovered evidence discovered after completion of the direct appeal process should be raised in the context of the PCRA**.

Pa.R.Crim.P. 720 Official Comments (emphasis added). This comment conditions the judicial mechanism for raising an after-discovered evidence claim upon the discovery of the evidence and the then-current procedural posture of the case. To be clear, when the evidence is discovered in the post-sentence but pre-appeal stage, a defendant may raise an after-discovered evidence claim *via* a post-sentence motion pursuant to Rule 720(C). If the evidence is discovered after a notice of appeal has been filed and, thus, the direct appeal process has begun, then the defendant must file a petition with the appellate court requesting a remand of the case to the trial

court in order to present a post-sentence motion pursuant to Rule 720(C). If the evidence is discovered after the direct appeal process challenging the defendant's final judgment of sentence has ended, the defendant must file a PCRA petition raising an after-discovered evidence claim.

We now consider whether Appellant properly raised his after-discovered evidence claim in a post-sentence motion pursuant to Rule 720(C) following his resentencing or whether he was required to file a subsequent PCRA petition raising his claim of after-discovered evidence (**see** 42 Pa.C.S.A. § 9543(b)(2)(vi)) and demonstrate an exception to the PCRA jurisdictional time-bar. Stated differently, we must now determine whether Appellant's resentencing on June 18, 2018 "reset" his final judgment of sentence date for purposes of raising his claim of after-discovered evidence *via* a post-sentence motion pursuant to Rule 720(C) or whether Appellant was required to raise his claim by means of a subsequent PCRA petition because his final judgment of sentence date of July 13, 2000 remained intact for purposes of his after-discovered evidence claim. We find that the trial court's resentencing of Appellant on June 18, 2018, did not reset the date on which Appellant's judgment of sentence became final for purposes of an after-discovered evidence claim*.*

More than two decades earlier, ironically in 1999, this Court in **Commonwealth v. Dehart**, 730 A.2d 991 (Pa. Super. 1999) held that an award of collateral relief in the form of a new sentence "did not affect the adjudication of guilt but merely the sentence imposed" and, importantly, did

not "'reset' the date used to determine the finality of judgment." *Dehart*, 730 A.2d at 993-994 n.2. Moreover, in 2008, this Court in *Commonwealth v. McKeever*, reiterated,

> a successful [] PCRA petition does not "reset the clock" for the calculation of the finality of the judgment of sentence for purposes of the PCRA where the relief granted in the [] petition **neither restored a petitioner's direct appeal rights nor disturbed his conviction, but, rather, affected his sentence only**. We reached this conclusion because the purpose of the PCRA is to prevent an unfair conviction.

*McKeever*, 947 A.2d at 785 (emphasis added), *relying on Dehart*, 730 A.2d at 994 n.2. The *McKeever* Court went on to explain that McKeever had "an absolute constitutional right to appeal his judgment of sentence" entered upon his resentencing in a direct appeal. *McKeever*, 947 A.2d at 786. However, upon resentencing, McKeever was "permitted to raise issues pertaining only to the re-sentencing procedure itself" and was not permitted to raise challenges to his underlying conviction. *Id.* In other words, where collateral relief is granted in the form of a new sentence and the relief granted did not disturb the validity of the underlying conviction, the original judgment of sentence, as it pertains to challenges directed at the conviction, was not altered by resentencing.

The finality principal set forth in *Dehart*, *supra*, and *McKeever*, *supra*, was affirmed by our Supreme Court in *Commonwealth v. Lesko*, 15 A.3d 345 (Pa. 2011). In *Lesko*, our Supreme Court stated that Lesko's original judgment of sentence (which was imposed in 1981 and became final in 1984)

was "final for all purposes **except** for that part of the final judgment that was disturbed by" the collateral relief proceedings, which in Lesko's case were federal *habeas* proceedings that resulted in Lesko's resentencing. **Lesko**, 15 A.3d at 366. The **Lesko** Court stated, "[t]he resentencing that occurred as a result of the coercive federal *habeas* mandate did not purport to revive the claims that expired once the 1981 verdict of guilt became final." **Id.** The **Lesko** Court went on to explain, "[t]o allow Lesko to pursue a PCRA petition as of right to raise new guilt phase claims more than 25 years later, after a direct appeal, an of-right [PCRA] petition, and completed federal *habeas corpus* proceedings, would render the [jurisdictional] time limitations of the PCRA meaningless." **Id.** at 366-367.

Here, Appellant's challenge to his original judgment of sentence, as set forth in his sixth PCRA petition, was based upon the fact that his life-without-parole sentence had been declared unconstitutional by **Miller**, **supra**, because Appellant was a juvenile at the time the crimes were committed, and the **Miller** constitutional ban on mandatory life-without-parole sentences was held to apply retroactively to sentences such as Appellant's by **Montgomery, supra**. Appellant's **Miller**/**Montgomery** claim did not challenge the validity of his underlying conviction, only that his mandatory life-without-parole sentence was illegal. Appellant was granted collateral relief in the form of a new sentence, wherein the trial court imposed an aggregate 35 years to life term of incarceration. Therefore, based upon the procedural posture of the case *sub judice*,

Appellant's new sentence did not "reset" the date his judgment of sentence became final because the award of collateral relief did not restore his direct appeal rights or disturb his underlying conviction.[22]  Upon resentencing, Appellant had the absolute right to challenge the resentencing procedures and the newly-imposed sentence *via* a Rule 720 post-sentence motion.  Appellant

---

[22] Appellant cited **Magwood v. Patterson**, 561 U.S. 320 (2010) in support of the proposition that his resentencing resulted in a new judgment of sentence which gave him the right to challenge his underlying conviction upon discovery of after-discovered evidence by virtue of a Rule 720(C) post-sentence motion. Appellant's Memorandum of Law in Support of After-Discovered Evidence Claim, 10/23/18, at unnumbered page 5.  We find Appellant's reliance on **Magwood** misplaced and contrary to the jurisprudence set forth by our Supreme Court in **Lesko**, *supra*.  Rather, the decision in **Magwood** reiterates the finality principal set forth in **Dehart**, *supra*, and **McKeever**, *supra*, that a new judgment of sentence imposed as the direct result of a resentencing proceeding permits a defendant to challenge the resentencing procedure, itself, and the sentence imposed.  **Magwood**, 561 U.S. at 342.  The **Magwood** Court specifically declined to address whether a new judgment of sentence imposed as a result of resentencing provides a defendant with a new opportunity to challenge the original undisturbed conviction.  **Id.** (stating, "[t]his case gives us no occasion to address" the question of whether "a sentence and conviction form a single 'judgment' for purposes of *habeas* review" since "Magwood has not attempted to challenge his underlying conviction").  In answering the question left unaddressed in **Magwood**, we note that the third circuit court of appeals in **Romansky v. Superintendent Greene SCI**, 933 F.3d 293 (3rd Cir. 2019) held that where a defendant's underlying conviction of guilt is not disturbed on appeal or in post-conviction proceedings, the defendant's subsequent resentencing is not a new judgment of sentence as to the underlying conviction.  **Romansky**, 933 F.3d at 300 (stating that, "[t]he sentence imposed [] after retrial [of some of Romansky's convictions, and subsequent resentencing,] was not a new judgment [of sentence] on the undisturbed counts of conviction").

We recognize that the holding in **Romansky**, *supra*, is not binding on this Court but it may serve as persuasive authority.  **Commonwealth v. Orie**, 88 A.3d 983, 1013 n.49 (Pa. Super. 2014), *appeal denied*, 99 A.3d 925 (Pa. 2014).

was not permitted, however, to raise his after-discovered evidence claim challenging his original, undisturbed conviction by means of his Rule 720 post-sentence motion. As discussed *infra*, Appellant's June 15, 1999 judgment of sentence, as it pertains to the validity of his conviction, became final on July 13, 2000 upon conclusion of his direct appeal. Therefore, any claim of after-discovered evidence must be submitted *via* a subsequent PCRA petition and cannot be raised *via* a Rule 720(C) post-sentence motion.

Appellant raised his instant after-discovered evidence claim in a post-sentence motion entitled "[Appellant's] Post-Sentence Motion Pursuant to 234 Pa. Code Rule 720." Although this motion referenced Rule 720(C) as the appropriate procedural mechanism for setting forth his after-discovered evidence claim, Appellant's reliance on Rule 720(C) was misplaced. Instead, the trial court was required to treat the portion of the motion pertaining to the after-discovered evidence claim as a subsequent PCRA petition because the motion requested relief contemplated by the PCRA. **See Wrecks**, 934 A.2d at 1289 (holding that, any petition filed after the judgment of sentence becomes final should be treated as a PCRA petition if it requests relief contemplated by the PCRA); **see also Commonwealth v. Torres**, 223 A.3d 715, 716 (Pa. Super. 2019) (stating, "so long as a pleading falls within the ambit of the PCRA, the [trial] court should treat any pleading filed after the judgment of sentence is final as a PCRA petition" (citation omitted)); **Commonwealth v. Snook**, 230 A.3d 438, 443-444 (Pa. Super. 2020) (holding, a petition for collateral relief will not be considered a PCRA petition

unless it raises issues cognizable under the PCRA); ***Commonwealth v. Taylor***, 65 A.3d 462, 467 (Pa. Super. 2013) (holding, a petition challenging the statutory limit was "undoubtedly cognizable under the PCRA" (***see*** 42 Pa.C.S.A. § 9543(a)(2)(vii)) and, therefore, any such petition regardless of title, was to be treated as a PCRA petition); 42 Pa.C.S.A. § 9543(b)(2)(vi) (recognizing, an after-discovered evidence claim as an issue cognizable under the PCRA).

The trial court erred as a matter of law in treating Appellant's claim of after-discovered evidence as a post-sentence motion pursuant to Rule 720(C) and not as a subsequent PCRA petition. As such, the trial court also erred in finding that it had jurisdiction pursuant to Rule 720(C) to address the merits of Appellant's after-discovered evidence claim. Instead, the trial court was required to treat Appellant's after-discovered evidence claim as a PCRA petition and determine whether it had jurisdiction to address such claim within the confines of the PCRA.[23]

---

[23] Our standard of review in a PCRA appeal requires [this Court] to determine whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. The scope of our review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the party who prevailed before that court. [] The PCRA court's factual findings and credibility determinations, when supported by the record, are binding upon this Court. However, we review the PCRA court's legal conclusions *de novo.*

***Commonwealth v. Small***, 238 A.3d 1267, 1280 (Pa. 2020).

Treating the portion of Appellant's post-sentence motion pertaining to after-discovered evidence as a PCRA petition, Appellant's submission was patently untimely because it was filed more than one year after his judgment of sentence became final on July 13, 2000.[24] Therefore, Appellant was required to plead and prove by a preponderance of the evidence one of the three statutory exceptions to the PCRA jurisdictional time-bar.[25]

_____

[24] As stated *supra*, Appellant was sentenced on June 15, 1999, and this Court affirmed Appellant's judgment of sentence on June 13, 2000. Appellant did not seek discretionary review with our Supreme Court and, as such, his judgment of sentence became final on July 13, 2000. **See** 42 Pa.C.S.A. § 9545(b)(3); **see also** Pa.R.A.P. 1113(a) (stating that, "a petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days after the entry of the order of" this Court to be reviewed).

[25] If a PCRA petition is untimely filed, the jurisdictional time-bar can only be overcome if the petitioner alleges and proves one of the three statutory exceptions, as set forth in 42 Pa.C.S.A. § 9545(b)(1). **Commonwealth v. Spotz**, 171 A.3d 675, 678 (Pa. 2017). The three narrow statutory exceptions to the one-year time-bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly[-]discovered facts; and (3) an after[-]recognized constitutional right." **Commonwealth v. Brandon**, 51 A.3d 231, 233-234 (Pa. Super. 2012), *citing* 42 Pa.C.S.A. § 9545(b)(1)(i-iii). A petition invoking an exception to the jurisdictional time-bar must be filed within one year of the date that the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2). If an appellant fails to invoke a valid exception to the PCRA time-bar, courts are without jurisdiction to review the petition or provide relief. **Spotz**, 171 A.3d at 676.

"[T]he newly-discovered facts exception to the time limitations of the PCRA, as set forth in [42 Pa.C.S.A. § ]9545(b)(1)(ii), is distinct from the after-discovered evidence basis for relief delineated in 42 Pa.C.S.[A.] § 9543(a)(2)[(vi)]." **Commonwealth v. Burton**, 158 A.3d 618, 629 (Pa. 2017).

To satisfy the newly-discovered facts exception, Appellant needed to demonstrate that the facts upon which his claim for relief was predicated, were unknown and that they could not have been discovered through the exercise of due diligence. *See Small*, 238 A.3d at 1271, 1281 (Pa. 2020) (noting that, "the newly[-]discovered fact exception, by its express terms, requires only that the petitioner plead and prove that the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence" (original quotation marks omitted)); *see also Commonwealth v. Fears*, 250 A.3d 1180, 1189 (Pa. 2021) (stating, an analysis pertaining to whether a petitioner has sufficiently

---

It is common for petitioners seeking relief based upon a claim of after-discovered evidence to rely on the same evidence or facts to invoke the newly-discovered facts exception when the PCRA petition is filed more than one year after final judgment. *Commonwealth v. Cox*, 146 A.3d 221, 229 (Pa. 2016). Here, Appellant relies upon the recanting witness's affidavit to invoke the newly-discovered facts exception, as well as to establish his claim for relief based upon after-discovered evidence.

When presented with such an intertwined argument of newly-discovered facts and after-discovered evidence, it is important that courts analyze the information presented by the petitioner under the correct test. To reiterate, in order to establish a claim for relief based upon after-discovered evidence, "a petitioner must prove that (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." *Id.* at 229 (citation and original quotation marks omitted); *see also Small*, 189 A.3d at 972. The test to be applied in analyzing whether a petitioner has pled and proven the newly-discovered facts exception is whether "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." *Small*, 238 A.3d at 1271.

pleaded and proven the newly-discovered facts exception to the jurisdictional time-bar prohibits a merits analysis of the underlying claim). For purposes of the newly-discovered facts exception, a determination that the facts were unknown to the petitioner is circumstance-dependent and requires an analysis of the petitioner's knowledge. *Small*, 238 A.3d at 1283. Facts evidenced by a newly-discovered or newly-willing source, but nonetheless previously known by the defendant, cannot be "unknown" for purposes of the newly-discovered facts exception. *Commonwealth v. Marshall*, 947 A.2d 714, 720 (Pa. 2008) (stating, "[t]he focus of the exception is on the newly[-]discovered facts, not on a newly[-]discovered or newly[-]willing source for previously known facts" (original quotation marks and original brackets omitted)).

Here, the trial court found that, the recanting witness's "sworn, written affidavit [was] **new evidence**." Trial Court Opinion, 12/9/19, at ¶47 (emphasis added). In characterizing the recanting witness's affidavit as "new evidence," the trial court implicitly found, and the record supports, that the affidavit contained newly-discovered facts that were not previously known by Appellant, namely that the recanting witness did, in fact, recant her trial testimony in a sworn affidavit and that, for the first time, she specifically identified Caltagirone as the shooter.

Our analysis of whether the facts upon which Appellant's claim is predicated were unknown begins with an examination of this Court's decision affirming the June 23, 2008 order denying Appellant's second PCRA petition as untimely and without an exception to the jurisdictional time-bar. There,

this Court concurred that Appellant's second PCRA petition was patently untimely and that a private investigator's reports failed to satisfy the newly-discovered facts exception. *Commonwealth v. Ortiz*, 972 A.2d 559 (Pa. Super. 2009) (unpublished memorandum). In particular, this Court discerned no error of law or abuse of discretion in the PCRA court's order denying Appellant's second PCRA petition as untimely and without exception because Appellant failed to demonstrate why the previously unknown facts contained in the private investigator's reports "could not have been discovered earlier through the exercise of due diligence." *Id*.

An examination of the private investigator's report reveals that on October 25, 2005, a private investigator memorialized his conversation with the recanting witness as follows:

> [The recanting witness] stated that back during the time of the murder[,] she only knew what she was told by Caltagirone. She had no direct knowledge of anything involving [Appellant and Caltagirone]. She was not present during conversations between the two of them. She only knew what she was told. [The recanting witness] was told what to say by [Caltagirone].
>
> [The recanting witness] also said that the [prior] typed statement that she signed was signed under duress. She said the information in the statement was what she was told she was going to say [and] no actual facts [were known by] her. When her mother began to raise a fuss over how the police were treating her daughter and that she did [not] want them talking to [the recanting witness], the police threatened to take [the recanting witness] away and place her in a home. [The recanting witness] was only 14 years old [at] the time. [The recanting witness] signed the statement so she could leave city hall. [The recanting witness] said that she even informed the district attorney of her desire not to testify, [and] she again was intimidated to testify.

Appellant's Post-Sentence Motion, 6/29/18, at Exhibit 11 (extraneous capitalization omitted). This report was prepared by a private investigator based upon his conversation with the recanting witness; however, the recanting witness did not sign the report acknowledging that the information contained therein was accurate or that she was, in fact, recanting her trial testimony. As such, the private investigator's report does not constitute an affirmative action by the recanting witness to recant her trial testimony under oath and to provide her recollection of the circumstances surrounding the incident. Moreover, the private investigator's report does not contain an identification of the shooter.

Years later, in September 2012, this Court affirmed the January 19, 2012 order denying Appellant's fourth's PCRA petition as untimely and without an exception to the jurisdictional time-bar. *Commonwealth v. Ortiz*, 60 A.3d 845 (Pa. Super. 2012) (unpublished memorandum). There, this Court concurred that Appellant's fourth PCRA petition was patently untimely and that his recent discovery of a Reading Police Department report, in which the recanting witness purported to tell the police officer that she made false statements incriminating Appellant at trial, failed to satisfy the newly-discovered facts exception. *Id.* This Court reasoned that the "precise issue of witness perjury was raised in [Appellant's] second PCRA petition" and that Appellant "cannot not claim this [police report] to be 'newly-discovered.'" *Id.*

An examination of the Reading Police Department report prepared on March 28, 2011, which was prepared based upon the police officer's interview with the recanting witness on February 21, 2011, reveals a summary of the interview as follows:

[The recanting witness] testified at the trial of [Appellant] and now contacted police with new information.

During my interview with [the recanting witness] she told me the following:

Prior to the robbery/murder of [the victim,] she had been present for a conversation between [Appellant] and [Caltagirone]. At this time [the recanting witness] was aware that these two had been committing crimes together[,] which included robberies.

Specifically[,] they discussed robbing a local business[,] like a pizza shop[,] but never mentioned a place by name. This conversation occurred a few days before [the victim] was killed.

On the night this incident occurred, [the recanting witness] remembers being picked up from her job [] by [Caltagirone]. She went home [] and [Caltagirone] left [her house. Caltagirone] had been working as a security guard [] but she does not think he [was working that evening].

[The recanting witness] was home for a short time when [Caltagirone returned]. He was wearing a dark blue hoodie. He had a ski mark and a handgun in his possession. He placed all three items into a plastic bag.

[Caltagirone] was very nervous and at that time he told her that [the victim] had been shot. [Caltagirone] said it was an accident and that the gun had just gone off. [Caltagirone] told her that [the recanting witness's] neighbor [] was inside the store when it happened[,] and he was scared that [the neighbor] may have recognized him.

Once [Caltagirone] was able to calm down[,] he was able to tell [the recanting witness] in a coherent manner what occurred.

[Caltagirone] told [the recanting witness] that he and [Appellant] had gone to the [restaurant establishment] to commit a robbery.

They were nervous and the gun went off. They were going to take the victim[']s gold chain but as his back was turned the gun went off. [The victim] got shot in the back and fell onto the grill. They both fled the store.

Later that night[, the recanting witness] did see [her neighbor's] mom and when she told [the recanting witness] what happened, [the recanting witness] acted like she [did not know anything about the incident].

[The recanting witness] was with [Caltagirone] when his pager went off. [The recanting witness] called back and [Appellant] was on the other end of the [telephone]. She gave the [telephone] to [Caltagirone,] and she overheard a conversation in which they discussed going to [Caltagirone's] mother[']s house in Delaware to lay low for a while.

[The recanting witness] did throw a bag containing the hoodie and mask into the Schuylkill River from the Bingaman [Street] Bridge. [Caltagirone] disposed of his gun while in Delaware.

Regarding her testimony about conversations with [Appellant], [the recanting witness] states she lied and never spoke to [Appellant] after the murder. [The recanting witness] also never heard [Appellant] make any incriminating statements implicating himself in this crime.

**[Caltagirone] never told [the recanting witness] which person actually shot [the victim].**

[The recanting witness] states she lied to protect [Caltagirone] because they were intimately involved at the time of this crime. However, she recently learned that she has stomach cancer and wants to set the record straight.

[Caltagirone and Appellant] did this crime together.

Nothing further.

Appellant's Post-Sentence Motion, 6/29/18, at Exhibit 12 (extraneous capitalization omitted, emphasis added). The recanting witness did not sign the police report. As such, the police report represents only the notion that the recanting witness sought to recant her trial testimony as recorded by the

police officer but does not constitute an affirmative recantation by the recanting witness, under oath, of her trial testimony. Furthermore, the police report does not state that the recanting witness definitively identified the shooter to the police officer.

In comparison to the private investigator's report and the police report, the recanting witness's affidavit evidenced her actual recantation, under oath, of her trial testimony and her identification of Caltagirone as the shooter. The recanting witness's affidavit stated, in pertinent part, as follows:

> I have tried on several prior occasions to have the [trial] court acknowledge that the testimony I gave against [Appellant] at his trial for the murder of [the victim] was false. Of my own free will, I am again telling the [trial] court that my testimony at that trial was false.
>
> I have been trying to make contact with [Appellant's] family and attorneys for [Appellant] for the last several years to again say that my testimony at [Appellant's] trial was false. Finally, through a computer search, I was able to contact a member of [Appellant's] family. As a result, in April 2018, I spoke to [Appellant's attorney]. I told [Appellant's attorney] that my testimony at the trial of [Appellant] was false. [Appellant's attorney] sent me a copy of my trial testimony to review before meeting with her.
>
> In October 2005, I met with a private investigator for the [then-]attorney for [Appellant]. I told the investigator the truth when I told him that during the time of the murder of [the victim], I only knew what I was told by [Caltagirone] and I had no direct knowledge of anything involving [Appellant] in that murder. I was not present at any conversation between [Caltagirone] and [Appellant] about the murder of [the victim]. [Caltagirone] told me what to say at [Appellant's] trial. [I was residing between my mother's house and Caltagirone's house in Reading, Pennsylvania,] when [Caltagirone] was telling me what to say. I also told the investigator that the typed statement I signed for the police was signed under threats. The information in the statement

was what I was told to say and not actual facts I gave to the police. When my mother complained about how the police were treating me and that she did not want me talking to the police, the [p]olice threatened to take me away and place me in a home. I was only 15 or 16 [years old] at that time. I signed the statement to be able to leave city hall. I told the district attorney that I did not want to testify. I was intimidated into testifying by [Caltagirone]. I was also worried about retaliation if I testified against [Appellant].

Years later, I went to the police station to say that I had lied at [Appellant's] trial and the police would not talk to me. I finally went to the district attorney. On March 28, 2011, I was interviewed by someone from the Reading Police Department. I told the person that on the night [the victim] was shot, [Caltagirone] came to my mother's [house] and had a ski mask, a hoodie[,] and a [handgun] in his possession. The ski mask was black on one side and purple on the other. He also had another gun that he carried. He carried three guns at all times in his vehicle. [Caltagirone] was nervous and told me that [the victim] had been shot. I already knew this from [my cousin]. [Caltagirone] said it was an accident and that the gun had just gone off. [Caltagirone] was afraid that [my cousin] might have recognized him. I threw two bags in the Schuylkill River because [Caltagirone] told me to and [Caltagirone] disposed of his [handgun] when he went to Delaware. I lied at trial when I said that I spoke to [Appellant] after the [incident] about the murder. I never spoke to him about the murder of [the victim,] and I never heard [Appellant] give any incriminating statements that implicated him in the murder of [the victim]. **[Caltagirone] told me he did not mean to shoot [the victim] but the gun went off.** I lied at trial to protect [Caltagirone] because he and I were romantically involved. [Caltagirone] told me that [Appellant] was involved in the crime, but I have no knowledge of whether [Appellant] was involved[,] or not. I asked [my cousin] whether [Appellant] was involved in the shooting of [the victim] and [my cousin] said [Appellant] was not involved. [Caltagirone] told me what to say at the trial. [On t]he night of [the victim's] murder[, Appellant] called [my] pager and asked [Caltagirone] to pick him up at a birthday party. When [Caltagirone] called him back[, Appellant] wanted to be picked up from a birthday party. [Appellant] later said he was going to stay longer at the party and that he had a ride. [Caltagirone's] discussion about going to

Delaware to lay low had nothing to do with [Appellant] and had to do, instead, with a girl being shot.

The police did not seem to be interested in what I had to say about my false testimony and what I had to say about [Caltagirone]. When I told the police about [Caltagirone's] involvement in the murder[,] the police tried to change my statements to involve [Appellant] instead of [Caltagirone]. The police also said it would be left up to the [district attorney] to charge me with perjury because I lied under oath and it was more than likely I would be charged. The police said that I should worry about my children because I was looking at jail time. I felt they were trying to scare me.

[Caltagirone] told me that if I said he was involved in the murder of [the victim], [I] would not see my children and that he would move away with my children. [Caltagirone] told me that if [he] ever went to jail I would vanish.

N.T., 11/20/18, at Defense Exhibit 1 (numbered paragraphing omitted, emphasis added).[26] The affidavit was signed by the recanting witness, and her signature was notarized, and a third-party witnessed her signature. This affidavit was the first sworn statement by the recanting witness in which she signed and affirmed a declaration recanting her trial testimony. Moreover, the recanting witness's affidavit is the first time she identified Caltagirone as the person that shot the victim. Caltagirone's identification as the shooter is a newly-discovered fact that was not part of the allegations contained in Appellant's prior two PCRA petitions. Therefore, we concur with the trial court

---

[26] The recanting witness's affidavit has been revised to reflect the corrections indicated by the recanting witness at the evidentiary hearing. N.T., 11/20/18, at 4-13.

that this affidavit constitutes a newly-discovered fact, or new evidence, that was unknown to Appellant.

Although this newly-discovered fact was unknown to Appellant until the recanting witness provided her signed affidavit in April 2018, an unresolved issue is whether Appellant could have previously discovered this fact, *i.e.*, obtained a signed affidavit in which the recanting witness recanted her trial testimony and identified Caltagirone as the shooter, through the exercise of due diligence.

To reiterate, once the PCRA court determines that the newly-discovered fact was unknown to the petitioner, the PCRA court then examines whether the newly-discovered fact could have been discovered earlier through the exercise of due diligence. **See Small**, 238 A.3d at 1282. "Due diligence does not require perfect vigilance and punctilious care, but merely a showing [that] the party [] put forth reasonable effort to obtain the information upon which a claim is based." **Cox**, 146 A.3d as 230 (citation and original quotation marks omitted). The petitioner must offer "evidence that he exercised due diligence in obtaining facts upon which his claim was based." **Id.** at 227, *citing* **Commonwealth v. Breakiron**, 781 A.2d 94, 98 (Pa. 2001). The question of whether a petitioner, based upon the circumstances of a particular case, would have been unable to discover the newly-discovered fact even through the exercise of due diligence is a question that requires fact-finding, and the PCRA court, as the fact-finder, should determine whether a petitioner has

demonstrated this requirement of the exception. ***Commonwealth v. Bennet***, 930 A.2d 1264, 1274 (Pa. 2007).

Here, the trial court did not analyze Appellant's post-sentence motion as a PCRA petition. As such, the trial court did not consider and apply the criteria which determine whether newly-discovered facts overcome the PCRA's jurisdictional time-bar. Where, as in this case, years have passed since Appellant's judgment of sentence became final, no court can reach the merits of an after-discovered evidence claim unless a timeliness exception has been pled and proven. Rather, in applying only the after-discovered evidence test, the trial court found that Appellant demonstrated, *inter alia*, the first prong of the after-discovered evidence test, namely that the after-discovered evidence could not have been obtained at or prior to trial through reasonable diligence. Trial Court Opinion, 12/9/19, at ¶¶49-50. The tests for after-discovered evidence and the newly-discovered facts exception, however, are distinct, as discussed *supra*. Here, for example, the trial court did not examine whether Appellant could have learned of the newly-discovered facts earlier than April 2018 through the exercise of due diligence. Therefore, we are constrained to remand this case to the trial court for the purpose of determining whether Appellant could have discovered the recanting witness's sworn affidavit and her identification of Caltagirone as the shooter earlier than April 2018 through the exercise of due diligence.

In conducting its due-diligence analysis, the PCRA court should be mindful that the analysis is circumstance-dependent, and should include

consideration of, *inter alia*, Appellant's incarceration, available financial resources, intermittent representation by counsel, the ability to afford private investigators, restricted methods of communication, including restricted internet usage, and the ability to locate and speak with the recanting witness, as well as, importantly, the recanting witness's willingness to come forward and candidly provide an affidavit recanting her trial testimony and identifying Caltagirone as the shooter.[27]

In sum, we vacate the November 26, 2018 order denying Appellant's after-discovered evidence claim. We remand this case to allow the PCRA court to determine whether Appellant invoked the PCRA court's jurisdiction pursuant to the newly-discovered facts exception. If the PCRA court determines that Appellant invoked the PCRA court's jurisdiction, then the PCRA shall address the merits of Appellant's after-discovered evidence claim and, in particular, whether the recanting witness's identification of Caltagirone as the shooter would likely lead to a different verdict if a new trial were grant.

---

[27] The recanting witness expressed that it was only after learning of Appellant's story on social media in the Spring of 2018, that she was compelled to come forward, finally, with a sworn affidavit in which she recanted her trial testimony and identified Caltagirone as the shooter. N.T., 11/20/18, at 7. The recanting witness's salient goal in coming forward and setting the record straight was to "get some weight off of [her] shoulders." *Id.* at 6. "He who has overcome his fears will truly be free." ~ Aristotle. The recanting witness appears to have been reluctant previously to come forward, to the degree of a sworn affidavit, to recant her testimony and specifically identify Caltagirone as the shooter because Caltagirone threatened to keep her children from her and threatened that she would "vanish" if he ever went to jail for the shooting death of the victim.

Judgment of sentence affirmed. Order vacated, in part. Case remanded for further proceedings.[28] Jurisdiction relinquished.

Judge King joins.

Judge Bowes files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/2022

---

[28] In light of our decision herein, Appellant's October 1, 2021 "motion to be restored to the oral argument list" is denied as moot.